WILLIAM PRALL and others

*v.*

ROBERT HAMIL and others.

1. Where an executrix, who was life-tenant of certain stock of the estate, assigned it as collateral security for the debt of some of the remaindermen, *Held*, an abuse of the trust.

2. The transfer and receipt of the stock, as stock of the estate then standing in the testator's name, is conclusive proof that the pledgees knew that such stock belonged to the estate, and it was their duty, under the circumstances, to ascertain whether the executrix had the right to transfer the stock as proposed ; and, if such duty was disregarded, they cannot claim protection on the ground of *bona fides* and ignorance.

3. *Prall v. Tilt.* 12 *C. E. Gr.* 393, distinguished.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. T. D. Hoxsey*, for complainants.

*Mr. Cortlandt Parker* and *Mr. John Hopper*, for Hamil and Booth.

THE CHANCELLOR.

The litigation in this suit is between the children of the late Edwin T. Prall, deceased, (except his sons Mortimer and Edwin,) and Messrs. Hamil and Booth.   The subject is the right to 525 shares of the capital stock of the Arkwright Manufacturing Company of Paterson, which were, on the 28th of April, 1874, assigned to Hamil and Booth by Rachel M. Prall, executrix of the last will and testament of her husband, the above mentioned Edwin T. Prall, as collateral security for the payment of any indebtedness of Prall Brothers to them, thereafter to be incurred.   The firm of Prall Brothers was composed of W. Mortimer Prall and Edwin T. Prall, sons of the testator.   Rachel M.

Prall v. Hamil.

Prall is their mother. All of the children of Edwin T. Prall, deceased, are interested in his estate, under his will. It makes certain provision for them, and then gives to the widow the entire balance of the estate, during her widowhood, with power of sale and re-investment. At her death it is to go to the children. It authorizes the executrix to advance, in a certain contingency, $10,000 each to Mortimer and Edwin. The executrix proved the will.

The stock in question was the property of the estate at the time of the assignment thereof to Messrs. Hamil and Booth. The agreement, in pursuance of which the transfer was made, was the result of negotiations between Edwin T. Prall, of Prall Brothers, and Mr. Hamil. That the latter and his partner both knew, at the time of the transfer, that the stock belonged to the estate, is conclusively proved by the receipt which they gave therefor. It was signed in the firm name of Mr. Booth, and it certifies that Mrs. Rachel M. Prall, executrix of Edwin T. Prall, deceased, had on that day delivered to Messrs. Hamil and Booth the certificates of the stock which then stood, as the receipt states, in the name of the testator. The certificates of the stock were in the name of the testator, and the transfer (signed in blank) purports to have been made by Mrs. Prall, as executrix of Edwin T. Prall, deceased, and is signed by her as such. Prall Brothers failed in business in January, 1876, and they then owed Messrs. Hamil and Booth $9,277.77, for which the latter held the stock as security. That sum was subsequently reduced somewhat, the sum of $508.20, received from another source, being applicable to its payment. There is no room to doubt that the assignment was an abuse of the trust. Messrs. Hamil and Booth state, in their answer, that when Prall Brothers applied for credit they declined to give it without security, and that thereupon both Mortimer and Edwin told them that they could give the required security by pledging 550 shares of the capital stock of the Arkwright Manufacturing Company; that they owned that stock, and had the right to pledge it and have

it transferred as they chose, and that their mother, as sole executrix of their father, in whose name it then stood, had. the right, and would give a power of attorney, to transfer the stock. The answer further says that Hamil and Booth received the stock as security, and sold the goods thereon *bona fide* and in the belief that Mortimer and Edwin were the owners of it. Not only does Edwin testify that he never represented or intended to represent that the stock was the individual property of Mortimer and himself, or either of them, but the testimony of Messrs. Hamil and Booth does not support their answer in this respect. Mr. Hamil, indeed, says that he believed, at the time of the delivery of the certificates of stock over to his firm, that the stock belonged to Prall Brothers, but, when subsequently pressed by his own counsel on the subject, he declines to say that it was represented to be the property of Prall Brothers. He was asked by his counsel, "When Edwin T. Prall negotiated with you the pledge of that stock, did he tell you that .Prall Brothers owned it and had a right to pledge it and have it transferred as they chose?" He replied, "He told me they had a right to pledge it and transfer it as they chose." His counsel then asked him, "Did he tell you that they owned it, and did you rely upon his representations as being true?" He answered, "I relied upon his representations being true; I don't remember that he told me they owned it." The negotiation appears to have been almost, if not quite, entirely conducted by Edwin on the part of his firm. Mr. Booth testifies, on the subject of the representation, as follows: "Edwin T. Prall, who attended to the matter, said that the stock was good, and, at the same time, I asked him if all were satisfied, whether he had consulted with his mother about it, and he said that she was." He subsequently says that when he asked whether all were satisfied he meant Mrs. Prall. Again, Edwin gave us, Hamil and Booth, to understand that Prall Brothers had "a right to use it" as collateral security. He further says, "We had no notice or suspicion that they were not the *bona fide*

Prall v. Hamil.

holders of the stock, or that Mrs. Prall had not the right to execute the power of attorney." It will be seen from the testimony that the defence that Mortimer and Edwin represented that the stock was their own, is not only not sustained, but is, in fact, disproved by Hamil and Booth themselves. I have no doubt that they thought the executrix had a legal right to pledge the stock of the estate as collateral security for credit to be given to Prall Brothers, though there is evidence that they had misgivings on the subject. But that is not enough to protect them in the possession of the stock. They had no notice of the fact that the stock belonged, not to Prall Brothers, but to the estate, and that the executrix was dealing with it in her capacity of trustee. It was their duty to ascertain whether she indeed had the right to transfer it as proposed. They knew that she was not disposing of it in the course of administration, but was pledging it, as executrix, to secure credit for two of her sons in their private business.

In this connection it may be remarked that there is evidence which induces the belief that they had notice of the equities. At a meeting of the creditors of Meyenberg, Prall and Co., which firm was succeeded by Prall Brothers, who bought their assets, Judge Barkalow said, in the hearing of Mr. Hamil, who was chairman of the meeting, that as the counsel of Mrs. Prall he would advise her not to endorse the composition paper of the first named firm. Mr. Hamil says he did not understand him to refer to Mrs. Prall in her capacity as executrix. He admits, however, that he told Judge Barkalow on that occasion that he agreed with him in opinion on that subject, and that he, Judge Barkalow, was perfectly justifiable in advising her not to endorse. This conversation was before the negotiations for credit on the security of the stock took place. It is possible, but it does not seem very probable, that this announcement of Judge Barkalow was not understood to have reference to the assumption by the widow of liability for her sons, to be met out of the estate. But, however that may be, equity

devolved upon Hamil and Booth, under the circum-
stances under which the assignment was made, the duty of
circumspection, the necessity of inquiring as to the right.
of the executrix to make the proposed pledge of the stock
for a purpose obviously and confessedly not connected with
her trust. *Nichols* v. *Peak*, 1 *Beas.* 69; *Field* v. *Schieffelin*, 7
*John. C. R.* 150; *Pendleton* v. *Fay*, 2 *Paige* 202; *Dey* v. *Dey*,
11 *C. E. Gr.* 182; *Shaw* v. *Spencer*, 100 *Mass.* 382. Having
disregarded their duty in the premises, they cannot success-
fully claim protection on the ground of *bona fides* and igno-
rance. It is urged by their counsel that the decision of this
court in *Prall* v. *Tilt*, decided at the last term, must govern
this case. But the controlling circumstances in the cases
are very different. There the application for credit was
made by Edwin. It was proved that he represented that
the stock in question in that suit was the property of Prall
Brothers, and had been acquired by them on account of
their interest in the estate. The executrix was authorized
by the will, as before mentioned, to advance to each of the
members of that firm $10,000. The executrix, by delivering
to Edwin for delivery to the Tilts, her power of attorney in
blank to transfer the stock, corroborated Edwin's statement,
and the Tilts, on the faith of the representation that the
stock was in fact the property of Mortimer and Edwin,
accepted it as security, and in good faith made advances
upon it. The Tilts had no means of prosecuting the inquiry
as to the truth of the representation. They had no notice.
The representation on which the decision in that case rests,
though set up substantially in the answer in this, is not
sustained, but, on the other hand, as before stated, is dis-
proved by the testimony of Messrs. Hamil and Booth
themselves. It is not in the case. On the contrary, the receipt
drawn with care and deliberation, and by a skillful hand, and
after consultation with their counsel, is cogent and conclusive
evidence against them on the subject of notice. In *Prall*
v. *Tilt* there was nothing in the offer to assign the stock as
collateral security, nor in the receipt given by the Tilts, to

contradict the statement made by the Tilts, that Edwin represented that the stock belonged to him and his brother. In this the documentary evidence is all against Hamil and Booth, and shows that they had notice that the stock was the property of the estate, and that the executrix was making an illegitimate use of it. There the assignees dealt with and received the stock as the lawful property of Mortimer and Edwin. Here the assignees received and dealt with it as the property of the estate. The complainants are entitled to relief, but it will be accorded on such terms as to secure to Messrs. Hamil and Booth, as security for their debt, any interest which Edwin and Mortimer may have in the stock in question, and any interest of the widow therein, which can, consistently with the rights of the other children under the will, be applied to that object. The decree will be without costs.