MICHAEL SULLIVAN ET AL. v. DOMINIC VISCONTI ET AL.,
PROSECUTORS.

Submitted March 20, 1902—Decided November 10, 1902.

1. The essential requirements of a written assignment of a chose in action considered.
2. The history of assignments of choses in action, under the statutes of this state and antecedent thereto, discussed.
3. Whether there exists any distinction between a legal and an equitable assignment of a chose in action, *quære*.
4. Where the Supreme Court reverses a judgment brought before it by *certiorari*, if the record discloses a finding by the trial court of all facts essential to a determination of the controversy between the parties, those findings are to be treated like a special verdict, and upon them the Supreme Court will render such final judgment as the trial court ought to have rendered.

On *certiorari* to Second District Court of Jersey City.

Before Justices FORT, HENDRICKSON and PITNEY.

For the plaintiffs, *McEwan & McEwan.*

For the defendants, *Robert Carey.*

The opinion of the court was delivered by

PITNEY, J. This was an action upon contract, founded on an assigned claim. The defence was that before the assignment of the claim to the plaintiffs it had been assigned to another party, to whom the defendants had made payment. The plaintiffs were successful in the trial court. The facts of the case are as follows:

In the spring and summer of 1901 James Mills, Robert Clark and another were in partnership under the firm name of Mills, Clark & Company. In the month of April, Mills, acting in the name and behalf of this firm, made a written contract with the defendants, who were contracting masons, doing

business under the name of Visconti & Vigiliani, for the furnishing of certain building stone for use in the construction of two houses on Bergenline avenue, near Morgan street, in Union Hill, for the sum of $250. Prior to June 19th, the defendants paid to Mills $20 on account thereof. On the date just mentioned Mills executed and delivered to a Miss Gardner a written instrument in the following form:

"Messrs. Visconti and Vigiliani: The contract I have with you for curb-line stone on Bergenline avenue, near Morgan street, Union Hill, which amounts to two hundred and fifty dollars, less twenty dollars received on account of said work. I hereby assigned the same to Miss Annie Gardner for value received, and authorize you to pay the balance of same to the party hereinabove mentioned when the work is completed.

"(Signed) JAMES MILLS."

Miss Gardner promptly notified the defendants of this assignment, and indeed lodged the paper with them. On the 6th day of July they paid her $50 on account.

On July 11th, Mills' partner, Robert Clark, in ignorance of the Gardner assignment, executed and delivered to the plaintiffs a written instrument, made and signed in the firm name of Mills, Clark & Company, purporting to assign, transfer and set over unto the plaintiffs the contract made between the firm just named and the defendants, and all moneys due or to grow due thereon, and constituting the plaintiffs the true and lawful attorneys of the assignors to sue for and collect the moneys so assigned. Of this assignment the defendants received immediate notice. At that time there remained $180 due upon the contract, and this balance was paid by the defendants to Miss Gardner on August 1st, notwithstanding notice of the second assignment. The present action was commenced on August 14th.

The case shows that at the time of the Gardner assignment there was no other contract existing between James Mills and the defendants, or between the firm of Mills, Clark & Company and the defendants, nor were any moneys due from the defendants to Mills or to his firm, except as above mentioned.

In order for the plaintiffs to maintain their action it was, of course, incumbent upon them to demonstrate that the assignment from Mills to Miss Gardner was invalid, and that the assignment from Clark to the plaintiffs was valid. The right of a single partner to assign a chose in action belonging to the firm was not controverted. Indeed, the plaintiffs derive their right of action through such an assignment. *Galway* v. *Fullerton,* 2 *C. E. Gr.* 389 (at *p.* 394) ; *Gerli* v. *Poidebard Silk Manufacturing Co.,* 28 *Vroom* 432.

Nor is it claimed by the plaintiffs that the circumstance that the moneys in question were not due upon the contract at the time of the Gardner assignment at all affects that assignment. The moneys were not due at the time of making the assignment under which the plaintiffs claim. Beyond question the moneys thereafter to grow due were assignable, in the absence of some stipulation in the contract forbidding such assignment, and the right of action would become ripe in the assignee at the completion of the contract.

The sole attack made upon the Gardner assignment is that it in no way refers to the partnership firm of Mills, Clark & Company, but purports on its face to be an assignment of a contract made by Mills alone with the defendants, and not of a partnership contract. The trial court acceded to this view, declared the Gardner assignment invalid as an assignment of the moneys due or to grow due under the contract in question, and, having found the assignment to the plaintiffs valid and efficacious, thereupon gave judgment in their favor for $180, and interest. The reasoning of the trial court was that a contract made by an individual partner, which does not show in any way that it is intended to relate to a partnership matter, must be regarded as a contract of the individual named in it and not the contract of the partnership.

In support of this view the following authorities are cited to us: *Story Part.* (*7th ed.*), § 102; *Geo. Part.* 237; *Pars. Cont.* 124; *Uhler* v. *Browning,* 4 *Dutcher* 79; *Clark* v. *Houghton,* 12 *Gray* 38; *Crocker* v. *Colwell,* 46 *N. Y.* 212; *Williams* v. *Gillies,* 75 *Id.* 197.

The soundness of the proposition may be conceded, but it

has no pertinency to the present case. The instrument here under criticism is not a contract, either of the individual or of the firm, but is a mere transfer of a chose in action. The question is not whom does it bind or purport to bind. The essential inquiries are: What is the thing that is intended to be transferred? Is the transfer made by one having the right and power so to do? And does the instrument contain apt and proper words to effectuate the intended transfer?

The first inquiry relates merely to the description of the subject-matter. So far as the paper speaks, it is as follows:

"The contract I have with you (Messrs. Visconti & Vigiliani) for curb-line stone on Bergenline avenue, near Morgan street, Union Hill, which amounts to two hundred and fifty dollars, less twenty dollars received on account of said work." This is to be read in connection with the signature, "James Mills." Taking this language, together with the words "pay the balance of the same, when the work is completed," &c., the purpose is clear to point out the subject-matter of the assignment, not strictly a contract, but the moneys due and to grow due upon a contract. The question is: Upon what contract?

The case shows that there was in existence at the time one contract, and only one, to which these descriptive terms could fairly be referred, and that was the contract made by Mills in the name and behalf of Mills, Clark & Company, with Visconti & Vigiliani for the furnishing of building stone for the construction of two houses at the place mentioned. It was this contract that provided for the payment of $250, and it was on account of this contract that Mills (for his firm) had received $20. There is no uncertainty or ambiguity in the assignment itself. The alleged ambiguity arises from an extraneous circumstance—the fact that the contract referred to was the contract of Mills, Clark & Company, and not of James Mills, individually. But when all extraneous circumstances that may be supposed to have been within the contemplation of the parties are examined, the supposed uncertainty or ambiguity is dissolved, because it then appears that the assignment can point to one contract only. This is the correct

process of reasoning with respect to such an uncertainty or ambiguity. And it is on this principle that parol evidence of the circumstances and surroundings of the parties, and especially with respect to the identity of the subject-matter, is admissible in exposition of a written instrument. 1 *Greenl. Evid.*, §§ 286, 288; 2 *Am. & Eng. Encycl. L.* (2d ed.), *tit. "Ambiguity,"* 287, 304; *Browne Parol Evid.,* § 49; *Doe d. Hiscocks* v. *Hiscocks, 5 Mees. & W.* 363; 9 *L. J. Exch.* 27; 2 *Eng. Rul. Cas.* 718; *Dunn* v. *English, 3 Zab.* 126; *Chamberlin* v. *Letson, 2 South.* 452; *Rue* v. *Rue, 1 Zab.* 369; *Fitch* v. *Archibald, 5 Dutcher* 160, 164.

The rule that if a contract is susceptible of two constructions that one should be adopted which will render it operative, rather than that which will render it void (*Varick* v. *Crane, 3 Gr. Ch.* 128; *Rue* v. *Rue, 1 Zab.* 369, 379), may be applied with equal reason to an instrument designed for the transfer of property.

Taking the language of the paper in question and viewing it in the light of the surroundings and circumstances of the parties at the time, the thing that was intended to be transferred—the subject-matter—was pointed out so as to identify it with entire certainty. This is all that is required. As a practical matter, there was, of course, no doubt or misunderstanding among the parties concerned as to the meaning of the instrument.

That a single partner could lawfully assign moneys due to the firm has already been shown. It remains to consider the form of the assignment. Is it of any moment that the paper, in effect, reads: "I, James Mills, assign these moneys that are due to the firm of Mills, Clark & Co.," instead of reading, "The firm of Mills, Clark & Co., by me, James Mills, assigns these moneys that are due to the firm of Mills, Clark & Co." Manifestly not; for here, again, it must be remembered that the paper is not an engagement or undertaking by the firm, but a mere transfer of some of the firm's property. Except for the purpose of identifying the subject-matter, the mention of the firm name is unnecessary. And as we have already seen, the subject-matter is sufficiently identified otherwise.

The operative words of the instrument are: "I hereby assigned the same to Miss Annie Gardner for value received, and authorize you to pay the balance of same to the party hereinabove mentioned when the work is completed." The faulty grammar is, of course, immaterial. The delivery of this paper to the assignee, followed by notice thereof given to the debtors, made known to all parties concerned (for the knowledge of Mills was the knowledge of his firm) that by this instrument the claim in question was presently made over to Miss Gardner.

It is suggested that, while such an instrument might be good as an equitable assignment, it is inoperative at law. A brief retrospect will dispose of this point. Originally every assignment of a chose in action arising out of personal covenant was a mere equitable assignment, and conferred no legal title upon the assignee. By the strictness of the common law the obligation of a covenant or contract depended upon a continuing privity between the parties thereto. With respect to personal covenants, it required a privity of persons; in covenants running with the land, a privity of estate sufficed. Except with respect to bills of exchange, promissory notes and other instruments negotiable by the law merchant or assignable by statute, the assignment of a chose in action was held to destroy the privity. But, from an early period, the courts of equity, recognizing a chose in action as the property of the obligee, permitted its assignment, and either admitted the assignee to sue in his own name in equity, or required the assignor to lend the use of his name to the assignee for a suit at law. And where the cause of action was cognizable at law, the law courts likewise came soon to admit the assignee to sue, not, indeed, in his own name, but in the name of the assignor, yet with power in the assignee to control the suit and receive the proceeds thereof. In this way the law courts, in effect, administered an equitable remedy, recognizing the original obligee as legally entitled to enforce the contract, but treating him as a trustee for him to whom its benefit had been assigned. Where occasion required, and in every case where the assignee desired it, this trust was declared on the face of

the proceedings, by appending to the name of the nominal plaintiff the words "who sues to the use of" the assignee; a use being nothing but an inactive trust.

Thus the courts of common law recognized and enforced a trust, not, indeed, as affecting the original cause of action, or as creating a cause of action, but as pointing out the party entitled to enforce the cause of action and receive the beneficial proceeds thereof. *Belton* v. *Gibbon,* 7 *Halst.* 76; *Sloan* v. *Sommers,* 2 *Gr.* 509, 512; *Carhart* v. *Miller,* 2 *South.* 573, 575; *Parsons* v. *Woodward,* 2 *Zab.* 196, 206; *Brown* v. *Dunn,* 21 *Vroom* 111.

Technically the evidence of the assignee's right to sue at law was in the form of a declaration of trust, with a power of attorney authorizing suit to be brought in the name of the principal, but for the benefit of the attorney. Such a power, if given for a valuable consideration, was held irrevocable, and the courts of equity held the assignee entitled to have such a power of attorney.

The policy of this state, from an early period, has been liberal with respect to assignments of choses in action. An act passed November 1st, 1797, made assignments of written evidences of indebtedness good and effectual in law, and permitted the assignee to sue in his own name, but allowed to the debtor all just set-offs, not only against the assignee, but against the assignor, before notice of the assignment. *Pat. L.,* p. 254; *Rev.* 1821, p. 305; *Rev.* 1847, p. 801.

By section 22 of the Practice act of 1855 it was provided that the assignee of any chose in action, if the assignor be dead, might sue in his own name, allowing all defences arising before notice of the assignment. *Pamph. L.,* p. 288, § 22.

Other acts are found in *Pamph. L.* 1863, p. 267; *Rev.* 1877, p. 850, §§ 19, 21; *Rev.* 1877, p. 708, § 31; *Pamph. L.* 1867, p. 486; *Rev.* 1877, p. 851, § 20.

In the Revision of 1874 the provisions respecting assignment of choses in action in general were carried into the Practice act as sections 19 and 21, just referred to. In 1890 section 19 was amended so as to provide, broadly, that all choses in action arising on contract shall be assignable at

law, and the assignee may sue in his own name, but that there shall be allowed all just set-offs, discounts and defences, not only against the plaintiff, but also against the assignor, before notice of the assignment shall be given to the defendant. *Pamph. L., p.* 24; *Gen. Stat., p.* 2591, § 340.

This statute, with respect to choses in action embraced within its terms, vests a legal title in the assignee, instead of the mere equitable title that would have been conferred in the absence of statute. But, so far as concerns a claim of the character now under consideration, there is nothing in the statute prescribing any form of words as necessary to transfer the title, and indeed nothing requiring an instrument in writing. Certainly the statute has obviated the necessity (if it ever existed, as intimated by 2 *Bl. Com.* 442) of a specific declaration of trust and power of attorney or other agreement permitting the assignee to sue in the name of the assignor. No power of attorney is now required, for an assignee sues in his own name. And no declaration of trust is necessary, for the trust is executed by the statute.

It is, indeed, settled that where the suit is brought by the assignee in his own name he must aver and prove that the cause of action was, in fact, assigned to him. *Stevens* v. *Bowers,* 1 *Harr.* 16; *Lindsay* v. *McInerney,* 33 *Vroom* 524; *Gaskill* v. *Barbour, Id.* 530; *Cullen* v. *Woolverton,* 34 *Id.* 644.

But there is nothing in this rule that prescribes or makes necessary any particular form of assignment. In *Cullen v. Woolverton* the plaintiff was held bound to set forth a written assignment in response to a demand for a copy of any instrument in writing upon which his action was founded, because the statute, in analogy to the old practice of craving oyer, gave to the defendant a right to have a copy of such an instrument. *Vail* v. *Pennsylvania Insurance Co.,* 38 *Vroom* 422, 426.

But it was long ago held by this court that an assignment of a chose in action, in order to be valid at law, does not even require to be in writing. *Hutchings* v. *Low,* 1 *Gr.* 246; *Allen* v. *Pancoast, Spenc.* 68.

In the learned opinion of Chief Justice Hornblower, in the latter case, the supposed distinction between a legal and an equitable assignment is ably discussed.

The statutes do not require that the assignee shall sue in his own name, but only permit this to be done. If the assignment in a given case were deemed insufficient to satisfy the requirements of the statute, doubtless the assignee could still pursue the old method of bringing the action in the name of the assignor. This court has held that an assignment of a definite part of the proceeds of a judgment will be recognized by a court of law, and the equitable rights of the assignee thereupon protected. *Brown* v. *Dunn,* 21 *Vroom* 111.

Given a chose in action, legal in its nature and coming within the purview of the act, and an instrument in writing which sufficiently describes that chose in action and authoritatively makes known to all persons concerned that the subject-matter has been or is thereby transferred and made over by the owner to a designated assignee, accompanied by delivery of that instrument to the assignee and notice to the debtor, the assignment is as complete at law as in equity. The written instrument here brought in question is, in form, entirely sufficient.

The prosecutors are entitled to a reversal of the judgment under review. And as the trial court has ascertained all the facts essential to the determination of the controversy between the parties, its certificate of those findings has the effect of a special verdict, upon which this court should give the same judgment that the trial court ought to have rendered. This is the established practice. *State, Hoxsey, pros.,* v. *City of Paterson,* 10 *Vroom* 489, 495; *S. C.,* 11 *Id.* 186, 191; *Lehigh Valley Railroad Co.* v. *McFarland,* 15 *Id.* 674, 678; *Smith* v. *Ocean Castle,* 30 *Id.* 198, 200; *Vorrath* v. *Burke,* 34 *Id.* 188, 190; *Van Marter* v. *Lucas,* 35 *Id.* 182, 184; *Central Railroad Co.* v. *MacCartney, ante p.* 165; *Taylor* v. *Reed, ante p.* 178.

Therefore let final judgment be entered in favor of the defendant, with costs.