**NELSON v. FERGUSON, Collector.**

**No. 4628.**

Circuit Court of Appeals, Third Circuit.

Feb. 2, 1932.

122

Phillip Forman, U. S. Atty., of Trenton, N. J., and Anthony Giuliano; Asst. U. S. Atty., of Newark, N. J. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellant.

J. Haviland Tompkins, of Jersey City, N. J. (Wm. P. Chapman, Jr., of New York City, of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

Earl and his wife agreed that any property which either of them had or might thereafter acquire "by earnings (including salaries, fees, etc.) * * *" should be received, held and owned by them as joint tenants. Pursuant thereto Earl for many years and in the tax years in question divided his salary and fees between himself and his wife and returned his half as taxable income. The Commissioner of Internal Revenue, acting under the provision of the Revenue Act of 1918 (section 213 (a), 40 Stat. 1065), which taxed the income of every individual, including "income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid," held that the husband's salaries and fees were his income and, notwithstanding the agreement, the whole was taxable to him. The Supreme Court, in Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, sustained the Commissioner on the theory that "the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it." Continuing, the court said: "That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

The defendant-collector says the case at bar, arising under the same provision in the Revenue Act of 1918 and like provisions in the Revenue Acts of 1916 (39 Stat. 757, § 2 (a) and 1921 (42 Stat. 237, § 213 (a), is squarely ruled by the Lucas-Earl Case. We have therefore made this brief summary of the Earl Case so that the facts of the instant case may be viewed in the light of that decision.

The story of this case, brought to recover additional taxes paid under protest, appears in the special findings of fact made by the court in the trial without a jury. As there were no exceptions to the findings, we shall assume all facts to be true. The plaintiff-taxpayer had judgment, and the collector appealed.

Harry R. Nelson, while in the service of Warner Chemical Company, obtained letters patent for an invention pertaining to electrolytic cells. Desiring that his invention be exploited, Nelson, on March 1, 1915, entered into a contract with the Warner Company whereby they agreed that Nelson should assign the patent to the company without right to sell it except with his consent; that the company should exploit the invention; that of the net profits realized one-third should be paid to Nelson and two-thirds retained by the Warner Company; that if the income to Nelson should be less than an average of $1,000 a year for 1915 and 1916 or less than an average of $2,000 a year for any succeeding period of two years, Nelson should have the privilege to request a reassignment of the patent and terminate the contract; and that, should the Warner Company at any time discontinue Nelson's services under his contract of employment, the patent should, at his request, be reassigned to him and the cell contract terminated. Pursuant to his engagement, Nelson, on July 15, 1916, "sold, assigned and transferred" his patent to the Warner Company subject to the conditions of the contract of March 1, 1915.

On Christmas Day 1916, Nelson orally and by appropriate words transferred and assigned to his wife all his interest in the profits from the cell contract and later orally informed an official of the Warner Company of his action. The latter suggested that it would be better for all concerned to have the arrangement in writing. Thereupon Nelson went home and drafted, without the aid of counsel, a contract between himself and his wife, bearing date March 7, 1917, by which, after referring in the preamble to all that had transpired, he agreed, in consideration of one dollar paid by his wife and of mutual promises, as follows:

"Harry R. Nelson hereby waives his right to receive all profits from the manufacture and sale of Electrolytic Cells as outlined in his agreement with the Warner Chemical Co., dated March 1, 1915, in favor of Anna Estelle Nelson during the life of that Agreement, and he further agrees to authorize the Warner Chemical Co. in writing to pay all such profits to Anna Estelle Nelson from the date of the signing of this agreement."

Anna Estelle Nelson, the wife, agreed on her part to "further cooperate with said Harry R. Nelson (her husband) in his desire to assist in exploiting said inventions and not to object if this entails prolonged absences from home or change of residence."

On the same day Nelson notified the Warner Company in writing to pay his wife "all moneys that may become due on account of my contract with you in relation to the Nelson Electrolytic Cells."

And thus matters stood until after the date of the tax question in suit, payments of one-third of the net profits being regularly made by the Warner Company to Anna Estelle Nelson, the wife.

The court found as facts that, though there was a nominal consideration of one dollar, the real consideration in the contract between husband and wife was love and affection; that Nelson by executing and delivering the contract intended to make provision for his wife so that if the cell contract should turn out to be valuable she might during his life have property of her own; that Nelson's intent was to transfer and vest in her all the profits which under the contract would otherwise be his; that the wife received the profits and both she and her husband always treated them as her separate property; that Nelson filed his returns for taxable income for the years 1917, 1918, 1919, 1920 and 1921 not including income from the cell contract and paid taxes on his other income; that Anna Estelle Nelson, the wife, made income tax returns for the same years including income from the cell contract and paid taxes thereon; that the Commissioner of Internal Revenue, conceiving that Anna Estelle Nelson had included in her returns non-taxable income and had improperly paid taxes thereon, refunded to her the amounts of taxes she had paid on the electric cell profits and, placing these profits in the returns of Harry R. Nelson, assessed thereon additional taxes and collected the same.

Evidently the electrolytic cell invention was much more valuable and the profits on the cell contract were very much greater than anyone had expected. The payments made to Anna Estelle Nelson during the five years in question aggregated $225,841.69, which when taken from her returns and put into the returns of Harry R. Nelson occasioned additional taxes assessed against him in the total of $102,319.72, the several items of which with their corresponding dates from which inter-

est is to run are the bases of the judgment now on review.

Whether the Earl Case rules this case depends on the character of the two contracts; the one between Nelson and the Warner Company, the other between Nelson and his wife; that is, to be more specific, on whether the contract between Nelson and the Warner Company vested property in Nelson and, if so, whether it was assignable to a stranger, and on whether the contract between Nelson and his wife was an anticipatory arrangement made to escape taxes by preventing future income from the cell contract from being paid to and vesting, even for a second, in Nelson who was originally entitled to it.

■ Unquestionably the contract between Nelson and the Warner Company, concerning a patent and the exploitation of the invention, dealt with property. McCormick Harvesting Machine Co. v. Aultman-Miller Co., 169 U. S. 606, 609, 18 S. Ct. 443, 42 L. Ed. 875; Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U. S. 641, 648, 35 S. Ct. 221, 59 L. Ed. 398. It is equally true that both parties had property rights in the contract. By that contract, and the subsequent assignment, the patent vested in the Warner Company. That was a property right of the Warner Company. The right to certain of the profits vested in Nelson. That was a property right of Nelson. Moreover, the contract was not revocable or subject to alteration. It was however terminable at the option of Nelson, not at will but only on the happening of certain events—an income below a fixed minimum for stated periods or Nelson's discharge from the Warner Company's employ during the running of the contract. Whether Nelson's limited "privilege" or right to terminate the contract and reacquire the patent on the happening of one or the other of these events was an option and therefore not a property right until exercised, 39 Cyc. 1238; Phenix Insurance Co. v. Kerr (C. C. A.) 129 F. 723, 66 L. R. A. 569, is unimportant, as we are concerned only with that property right in the contract which produced taxable income. That was Nelson's right to a share of the profits. We hold that it was an out and out property interest vested in Nelson without limitation or restriction so long as the contract ran, and that it was not defeated or affected by the reserved contingent right to a reassignment of the patent. Being such, it would have constituted a part of Nelson's estate had he died, and we have no doubt that while he lived it was assignable to a stranger. Cogan v. Conover Mfg. Co., 69 N.

J. Eq. 809, 64 A. 973, 115 Am. St. Rep. 629; Board of Education v. Duparquet, 50 N. J. Eq. 234, 24 A. 922.

The next questions are whether Nelson's property interest in the contract was assignable to his wife and, if so, whether it was assignable in the sense of so completely divesting him of the property and vesting it in her that thereafter the income arising from it was taxable not as his but as hers.

■ In answering these questions it must be kept in mind that the thing assigned was not Nelson's future salary or personal earnings as in the Earl Case and in the later case of Luce v. Burnet, Commissioner, 55 F.(2d) 751, Court of Appeals of the District of Columbia, January 18, 1932, things not then in existence, 5 Corpus Juris, 87, but was an existing thing, namely; property in a contract. The assignment being of property was therefore not merely an assignment of income when earned, though from the property assigned profits and income were expected to flow. Following the reasoning in the like case of Hall v. Burnet (Court of Appeals of the District of Columbia, November 16, 1931) 54 F.(2d) 443, the assignment was not of future earnings of the assignor arising out of his future services, as in the Earl and Luce Cases, but was distinctly an assignment of a property right presently existing. Though the future income from this property right was uncertain and contingent as to amount, the right itself, the thing assigned, was fixed and certain—not revocable as in Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916—and was independent of any future service or any future action on the part of the assignor. We hold it was clearly assignable to a stranger and, if so, it was, subject to the next question, assignable to the wife. Whether to a stranger or wife, we think the income from it should have been taxed to the assignee, not to the assignor who had ceased to own or control it, Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916; Mitchel v. Bowers (C. C. A.) 15 F.(2d) 287; Harris v. Commissioner (C. C. A.) 39 F.(2d) 546, unless, indeed, the decision in the Earl Case interposes.

That case deals exclusively with the assessment of a tax upon moneys to be received by a husband in payment for his personal services. The contract between Earl and his wife was made in 1901; the services were rendered and moneys paid in 1920 and 1921. It provided for the commingling of all the earnings of both spouses and for holding the same as joint tenants. It dealt with future

earnings, extending in that case twenty years. There was no existing thing, tangible or intangible, to which at its execution the contract could presently attach. It was therefore an executory contract based upon mutual promises in respect to things not yet in existence. One-half of the husband's earnings never could be paid to the wife unless and until earnings had accrued to him on account of things he had done, services he had rendered. Earl and his wife were anticipating the future and dealing with the potential income of each other, which, before it reached either of them, must come to and pass through the other, and in doing so it would, for an instant at least, fall under the taxing act, and this because the assignment in that case was bottomed on the fact that the earnings would come to the husband and be his property else there would have been nothing on which it could operate. This seems to be the central point of the Earl Case not only as expressed in the opinion in that case but as restated in the opinion in Poe v. Seaborn, 282 U. S. 101, 117, 51 S. Ct. 58, 75 L. Ed. 239. There the assigned income sprang from services which were not property and which of course could not be assigned. Here the income sprang from assigned property and, if validly assigned, the income was that of the assignee, the owner of the property, and was taxable as hers.

The next and remaining question is whether the assignment, being from husband to wife, is valid.

The contract between Nelson and his wife was a New Jersey contract. Under New Jersey law a husband may make a valid conveyance or assignment of either real or personal property directly to his wife, when no question of his creditors is involved, for a nominal consideration, or, indeed, without any consideration other than that of the marital relation. Woodruff v. Clark, 42 N. J. Law, 198; Garwood v. Garwood, 56 N. J. Eq. 265, 38 A. 954; Sipley v. Wass, 49 N. J. Eq. 463, 24 A. 233; Travelers' Insurance Co. v. Grant, 54 N. J. Eq. 208, 33 A. 1060; Cowdrey v. Cowdrey, 71 N. J. Eq. 353, 64 A. 98. Also under New Jersey law contracts are not held void because of informality of expression if the intention is clear. Shannon v. Mayor, 37 N. J. Eq. 123; Sullivan v. Visconti, 68 N. J. Law, 543, 53 A. 598; Id., 69 N. J. Law, 452, 55 A. 1133.

Nelson, without the aid of a lawyer, drafted the assignment to his wife in these terms:

"Harry R. Nelson hereby waives his right to receive all profits from the manufacture and sale of Electrolytic Cells * * * in favor of Anna Estelle Nelson."

Though inartificially expressed the meaning of this phrase is certain and operated as a valid assignment, Crone v. Braun, 23 Minn. 239; or, if uncertain, the parties have by their conduct through five years made it certain, notably by Nelson's immediate instruction to the Warner Company to pay all profits to his wife, by payments regularly made to her and the uninterrupted treatment of the profits by both husband and wife as her property. We hold the assignment to the wife valid.

Being of opinion that the cell contract concerned property, that by its terms a property interest in the contract became vested in Nelson, that by his assignment of that interest he completely divested himself of it and vested it in his wife, we hold that the income later arising therefrom, which is the subject of taxation here in suit, did not accrue to him, nor did it pass through him or belong to him even for an instant. If we are right in this, the law of the Earl Case does not apply, and the income from the property right here assigned to the wife was the wife's income and, being taxable, was assessable against her alone.

The judgment is affirmed.