## LEWIS v. ROTHENSIES, Collector of Internal Revenue.

### No. 3563.

District Court, E. D. Pennsylvania

Nov. 10, 1944.

Frank A. Moorshead, of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Dist. Atty., and Thomas J. Curtin, Asst. U. S. Dist. Atty., both of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This action to recover an income tax paid under protest was tried to the court without a jury. The evidence consists entirely of a stipulation, and I adopt it as special findings of fact.

The sole question involved is whether royalties upon books, of which the plaintiff was the author, payable to the plaintiff under contracts with his publisher and assigned by him to his children, are taxable to the plaintiff or to his assignees.

If the royalties were income derived from compensation for personal service they would, under the rule of Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, be taxable to the plaintiff. This because the statute was intended to tax salaries to those who earned them and its import was that the tax upon that kind of income "could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it." And under Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, it would make no difference that the right to receive the income antedated the transfer.

It is certainly a close question whether the royalties involved in this case were compensation for personal service or income from income-producing property. On the whole, I think, the latter. It appears from the stipulation that the plaintiff is employed as an "editor" for the publisher, but it states that he is *also* an author of the books from which the royalties are derived and that he *sold* these works to the publisher. It does not appear that writing the books was a part of the services which he was required to render as editor under his contract of employment, a fact which, if true, might have made a difference. When an author writes a book the literary ideas embodied in the manuscript are property. When he sells it in exchange for royalties his interest in the contract by which the royalties are paid is property. Of course, the book came into being by his personal service (a term by no means restricted to services rendered by virtue of an employer-employee relationship), but so do many other kinds of income-producing property. For example, a man might build, entirely by his own labor, a boat or a wagon or a barn. If he did so and rented what he had made to others, it would hardly be contended that the income was income derived from compensation for personal service. Granted that a lawyer who draws a will

for a client does not create property and sell it to his client, and, perhaps, that an artist who paints a portrait is paid for his work rather than for the canvas and oils, still a literary work is marketable and has much more than a purely personal or sentimental value. So here, I think that the royalties were derived from income-producing property. The Circuit Court of Appeals for the Third Circuit in Nelson v. Ferguson, 56 F.2d 121, held that the sale of a patented invention in exchange for a share of the profits from its exploitation vested property rights in both parties.

Assuming then that the royalties came from income producing property, the question is whether the effect of these assignments was to accomplish a complete transfer of some interest which the plaintiff had in the property from which the income was derived. This was the basis on which the income from a trust was taxed to the assignees in Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 333, 81 L.Ed. 465. That case, it seems to me, marks the extreme limit to which the theory that a transfer of income involves also a transfer of corpus can be pushed; and it will be noted that in Blair v. Commissioner of Internal Revenue, supra, the Supreme Court followed the interpretation of the State Court to the effect that the assignments were not only of income but also of a beneficial interest in the corpus and the Court said, "it was in that aspect that petitioner's right to make the assignments was sustained."

Here, the plaintiff's literary property had been transmuted into a chose in action—a contract with his publisher. The assignments do not purport to convey any interest in the contracts, whereas in the Blair case as pointed out in Helvering v. Horst, supra [311 U.S. 112, 61 S.Ct. 148], "the right to income from the trust property was thought to be so identified with the equitable owner-

ship of the property, from which alone the beneficiary derived his right to receive the income and his power to command disposition of it, that a gift of the income by the beneficiary became effective only as a gift of his ownership of the property producing it." The principle upon which Helvering v. Horst, supra, was decided is broad and sweeping and it would require an exceptional case to avoid it. The ruling was that when income is the subject of a gift, no matter by what sort of assignment, the donor has really enjoyed the income because "even though he never receives the money, he derives money's worth from the disposition of [it] * * * in a real sense he has enjoyed compensation for money loaned or services rendered. * * *"

To the same effect was the recent case of Duran v. Commissioner of Internal Revenue, 10 Cir., 123 F.2d 324, in which Judge Bratton summarized and applied the rule governing Helvering v. Horst, supra, in a case covering the assignment of monthly payments to which the assignor was entitled from his employer under a retirement plan.

The assignments in the present case amount to little more than a direction to pay the royalties to the assignees. The contracts under which they are due from the publisher do not appear in the stipulation and from the mere statement of the stipulation I am unable to find the exceptional condition which existed in Blair v. Commissioner of Internal Revenue, supra, namely, that by reason of the nature of the property an assignment of the income necessarily carried with it an interest of some kind in the property itself.

The conclusion, therefore, is that whether the royalties upon these books be income derived from personal services or from income-producing property, they are properly taxable to the plaintiff assignor.

Judgment for the defendant.