**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2772 & 20-2931
_____

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)

v.

KIMBERLY CLEMENTE; M.C., a minor; S.C., a minor; I.C.
a minor; G.C., a minor; NEVADA TRUST COMPANY;
BRADLEY CLEMENTE; MICHAEL CLEMENTE; JOHN
CLEMENTE; LINDA CLEMENTE; THE ESTATE OF
JOHN S. CLEMENTE.

Linda Clemente,
Appellant in case 20-2772

Kimberly Clemente, M.C., a minor, S.C., a minor, I.C., a
minor, G.C., a minor,
Appellants in case 20-2931
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:17-cv-03824)
District Judge: Honorable Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 17, 2021

Before: CHAGARES, *Chief Judge*, and BIBAS and FUENTES, *Circuit Judges*

(Filed: December 17, 2021)
_____

**OPINION**[*]

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

_____

BIBAS, *Circuit Judge*.

Much like the chancery cases of Dickensian England, this familial feud has snarled up into a tangled mess. A rich man died, but not before selling off his life-insurance policy. Now each of his ex-wives claims a stronger right to the policy than the buyer. Both have plausible equitable claims. But the buyer paid market value for the policy and had no notice of the ex-wives' interests. So it is entitled to the payout.

## I. BACKGROUND

### A. The insurance sale

John Clemente was a successful cardiologist. But in a cruel twist of fate, he suffered from terminal heart disease. Knowing that his days were numbered, he sold his $1.5 million life-insurance policy to enjoy the proceeds while he could.

Clemente sold the policy to Coventry First for ████████. Coventry then assigned the policy to an affiliate, which sold it to Habersham for ████████. Habersham, in turn, sold it to Nevada Trust for ████████. From then on, Nevada Trust paid the premiums.

### B. The ex-wives

A year and a half later, John died. His ex-wives discovered the sale and were not happy. Each claimed that a court order during her divorce barred him from selling the policy and entitled her to the payout. *See Travelers Ins. Co. v. Johnson*, 579 F. Supp. 1457, 1461–63 (D.N.J. 1984).

John's first wife, Linda, had filed for divorce in 2003. Though a court ordered that they distribute their assets equitably, John could not pay up and declared bankruptcy. In 2010,

2

the bankruptcy court found that Linda was his biggest creditor, and she recorded that judgment for $2.7 million in New Jersey. Also, the New Jersey Superior Court ordered John to take out term life insurance for Linda's benefit. To comply, John named Linda as his life-insurance beneficiary.

But John's compliance did not last. In 2014, he took Linda off the policy and substituted his second wife, Kimberly. Several months later, he took Kimberly off and substituted his children. Kimberly soon filed for divorce, and a court ordered him not to dispose of any marital assets, including the life-insurance policy.

**C. This lawsuit**

To resolve the competing claims, the life insurer filed this interpleader action in federal court. Linda and Kimberly argue that their divorce proceedings give them better claims to the life insurance. But the District Court disagreed. Nevada Trust, it reasoned, bought the policy in good faith for market value. When it bought the policy, Nevada Trust did not know about the ex-wives' interests. Even if Coventry knew of their claims, there was "no basis for imputing any knowledge that Coventry First may have had to Defendant Nevada Trust." App. 474. So Nevada Trust, the court ruled, could keep the policy payout.

Now both ex-wives appeal to us. The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under § 1291. We review the District Court's grant of summary judgment de novo. *Tundo v. Cty. of Passaic*, 923 F.3d 283, 286 (3d Cir. 2019).

**II. LINDA, AT LEAST, HAS AN EQUITABLE INTEREST IN THE INSURANCE PROCEEDS**

In New Jersey, if a court orders a divorcé to list his ex-wife as a life-insurance beneficiary and he disobeys, she has an equitable interest in the insurance proceeds. *Travelers*,

3

579 F. Supp. at 1461–63; *see Della Terza v. Estate of Della Terza*, 647 A.2d 180, 181 (N.J. Super. Ct. App. Div. 1994).

This rule fits Linda's case. The Superior Court ordered John to get life insurance for her benefit. And though he complied at first, he soon removed Linda as a beneficiary. So Linda has an equitable interest.

Kimberly's interest is a closer call. She makes a claim on behalf of her minor children, who were the named beneficiaries when John sold the policy to Coventry. This claim rests on the divorce court's 2015 order not to dispose of any marital assets, including the life-insurance policy. Yet unlike other New Jersey cases recognizing equitable life-insurance interests, the court here never ordered John to name a particular beneficiary. *See Travelers*, 579 F. Supp. at 1460–63 (collecting cases).

But we need not decide whether to extend New Jersey law to recognize an equitable interest here. Even if Kimberly has one, Nevada Trust has the stronger claim.

### III. NEITHER EX-WIFE HAS A REMEDY AGAINST NEVADA TRUST

Both Linda and Kimberly ask us to protect their interests by imposing a constructive trust. We may do so when someone wrongfully transfers property subject to an equitable interest. *See, e.g.*, *Flanigan v. Munson*, 818 A.2d 1275, 1281–83 (N.J. 2003). To impose a constructive trust, we must find both that a party committed a wrongful act and that, as a result, the recipient was unjustly enriched. *Id.* at 1281. Here, only one of these requirements is met. Though John's sale was wrongful, Nevada Trust was not unjustly enriched.

4

**A. John was wrong to sell the policy**

John acted wrongfully twice over. By taking Linda off the policy, he defied a court order. And by selling the policy, he ignored a court order not to dispose of the marital assets he shared with Kimberly. *See Flanigan*, 818 A.2d at 1281–82. So the first requirement is satisfied.

**B. Nevada Trust was not unjustly enriched**

But the second requirement is not. Nevada Trust is a bona fide purchaser. It bought the policy at market price and had no notice of the ex-wives' claims. "[A] [b]ona fide purchaser for value … will prevail over one seeking to impose a constructive trust." *Hirsch v. Travelers Ins. Co.*, 341 A.2d 691, 693 (N.J. Super Ct. App. Div. 1975).

Nevada Trust paid market value for the policy. True, Kimberly argues that *Coventry* paid too little. But we focus rather on the price that *Nevada Trust* paid. *See Venetsky v. W. Essex Bldg. Supply Co.*, 100 A.2d 291, 296 (N.J. Super. Ct. App. Div. 1953) ("[A] person may have the standing of a bona fide purchaser although he acquires title from one who is not a bona fide purchaser."). And Kimberly does not dispute that *it* paid fair market value. Plus, there is no evidence in the record to the contrary.

Next, Linda and Kimberly argue that when Nevada Trust bought the policy, it had notice of their interests. But both of their notice theories fail.

*1. Record Notice.* Linda argues first that Nevada Trust had record notice. She points to the divorce court's order and the bankruptcy court's recorded judgment against John. But she cites no law to support her claim. True, in New Jersey a docketed judgment operates as a lien on *real* property and so binds a good-faith buyer. *Les Realty Corp. v. Hogan*, 714

5

A.2d 366, 368–69 (N.J. Super. Ct. Ch. Div. 1998). But that works because real property has a physical location. The buyer knows where the land is and must search that county's records. *See id.* at 369.

We see no suggestion that this rule also applies to life insurance or other intangible assets, and the ex-wives cite none. For one, New Jersey courts consistently phrase this record-notice rule as applying to real property. *E.g.*, *New Brunswick Sav. Bank v. Markouski*, 587 A.2d 1265, 1269–70 (N.J. 1991). For another, limiting record notice to land makes sense. Life insurance has no title registry. Nor does it have a physical location, which would limit where potential buyers must check county records. Linda's argument has no toehold in New Jersey law. We will not extend the records-search requirement to reach beyond realty.

*2. Inquiry Notice*. Linda and Kimberly also argue that Nevada Trust had to investigate whether others had prior claims to the policy. Because it did not, they say, it should be treated as on notice of their interests. They try to explain *why* Nevada Trust had to investigate. Yet their arguments do not persuade.

To start, Linda claims that when Nevada Trust bought the policy, it agreed to assume the risk of existing claims. But the contract of sale just allocates risk between the buyer and seller, not with third parties like Linda and Kimberly. Even if it did, Linda has no right to enforce the contract because she is not a party to it. *See First Nat'l State Bank of N.J. v. Carlyle House, Inc.*, 246 A.2d 22, 34 (N.J. Super. Ct. Ch. Div. 1968).

Next, Linda argues that Nevada Trust owed a duty to its investors to "verify facts relevant to the investment and management of trust assets." N.J. Stat. Ann. § 3B:20-11.3(e). True enough. But because Linda is not an investor in Nevada Trust, it owed her no duty.

Finally, the ex-wives argue that Nevada Trust had to investigate because it knew about John's divorces. This theory is plausible: where a "prospective purchaser of … property subject to an equity, learns of facts … which … would lead an ordinarily prudent man to a belief that there was a possibility that an equity existed, the purchaser has a duty to make a reasonable inquiry." *Bogert's The Law of Trusts and Trustees* § 894 (2021) (citing *Prall v. Hamil*, 28 N.J. Eq. 66 (N.J. Ch. 1877)).

But there is no evidence that Nevada Trust knew about the divorces. Instead, the ex-wives invite us to impute Coventry's knowledge to Nevada Trust. Yet we have no reason to do so. As undisputed testimony shows, the companies have no common ownership and never communicated about the policy. So Nevada Trust had no notice of facts that would give rise to a duty to investigate.

Because Nevada Trust paid fair market value and had no notice of the ex-wives' interests, we may not impose a constructive trust on the insurance proceeds.

## IV. KIMBERLY'S POLICY ARGUMENT FAILS

Kimberly asks us to set aside Nevada Trust's claim based on New Jersey's public policy to ensure payment of child support. She rests on a court of equity's "sound discretion, according to the principles of equity and essential justice in the particular circumstances and the requirements of positive law and sound public policy." Kimberly Br. 12–13 (quoting *Burke v. Hoffman*, 147 A.2d 44, 48 (N.J. 1958)).

7

But that doctrine is an equitable one, limited to competing equities. *See Burke*, 147 A.2d at 48. Nevada Trust's claim is not equitable. It is the *legal* beneficiary of the policy. And courts have no general equitable power to do justice by setting aside legal rights. Kimberly tries to get around this rule by describing life insurance as a "chose in action," which counts as an "equitable assignment." Kimberly Br. 12. She is half right. Nevada Trust's right to the policy *is* a chose in action: a right to sue for the money. But not all rights to sue are rights to sue in equity. And "all choses in action arising on contract shall be assignable *at law*." *Sullivan v. Visconti*, 53 A. 598, 601 (N.J. 1902) (emphasis added). As the legal assignee, Nevada Trust's claim is legal, not equitable. So even though John's child-support obligations are at risk, we may not set aside Nevada Trust's right to the insurance proceeds.

\* \* \* \* \*

Linda and Kimberly have plausible equitable claims to John's life insurance. But the legal interest of a good-faith buyer takes precedence. Because Nevada Trust paid fair market value for the policy and had no notice of the ex-wives' interests, it is entitled to the payout. Neither law nor equity makes Nevada Trust pay for John's wrongs.