**HELVERING, Commissioner of Internal Revenue, v. SEATREE.**

**No. 6130.**

United States Court of Appeals for the District of Columbia.
Argued April 6, 1934.
Decided June 4, 1934.

Sewall Key, J. Louis Monarch, E. Barrett Prettyman, Harold Allen, and Walter L. Barlow, all of Washington, D. C., for appellant.

Edward B. Burling and W. M. Parker, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This is an appeal from decisions of the Board of Tax Appeals involving consolidated proceedings for the determination of deficiencies of income taxes in the sums of $9,-207.60, $4,012.69, and $5,111.88 for the years 1922, 1923, and 1924, respectively.

It appears that for several years prior to 1920 appellee, Seatree, had been a member of the accounting firm of Price, Waterhouse & Co., of New York, consisting of nineteen partners. In addition to the cash capital contributed by the partners, there was recognized a valuable good will belonging to six senior members, of whom Seatree was one; the remaining thirteen partners having no interest therein.

On June 1, 1920, the partners entered into a new partnership agreement. Under that agreement Seatree was accorded a right to 16 shares of the profits while he remained a partner; a right to 7 per cent. on his capital invested in the firm until repaid to him; a right, in the event of his death or retirement, to have a return of his capital, with accrued interest; and, in the event of his death or retirement, to have certain payments made to him or his legal representatives during the three-year period following his death or retirement.

Section 2, article IV, of the agreement, making provision for the six senior partners in case of death or retirement, provided: "In consideration of the rearrangement and readjustment effected by this indenture and the capital and shares agreement, the parties of the first, second, third, fourth, fifth, and seventh parts, respectively, or their several respective legal representatives, as the case may be, shall be entitled, in each of the three years (commencing on July 1) next immediately following his death or retirement, to receive from the partnership, in addition to the other amounts which shall be payable to him as in this article provided, a portion of the profits of the partnership for each of such three years as if he were the owner of shares in the partnership, in addition to the shares of the continuing partners, as follows: In the case of said May, six shares; in the case of said Webster, four shares; in the case of said Seatree, four shares; in the case of said Sterrett, four shares; in the case of said Berger, two shares; in the case of said Brodie, two shares. Such payments shall be made to such retiring partner, or to his legal representatives as the case may be, at the same time that profits for each of such three years, when determined, shall be paid to the continuing partners."

Seatree retired from the firm on June 30, 1921, and received and returned as income for taxation sixteen shares of the profits up to that date, which included all business done up to that date, whether or not then paid for or billed. On June 29, 1922, Seatree executed and delivered a certain written instrument, under seal, by which he "granted, bargained, sold, aliened, remised, released, conveyed, assigned, transferred, and set over, * * *" to the Equitable Trust Company of New York, as trustee for the benefit of his daughters, "all my right, title, and interest in and to four undivided shares of the profits or income now due, or which may hereafter become due and payable to me for the three years ending June 30, 1924, under and by virtue of a certain partnership agreement." The instrument gave the trustee full power

to manage the property and invest the funds for the benefit of the beneficiaries named therein. Seatree reserved the right to add to the principal, to direct the investment of the funds, should he so elect, and to remove or change the trustee, but reserved no power to revoke the trust. Of the establishment of this trust the partnership was fully advised, and gave its assent to the assignment.

The trustee received under the trust agreement for the fiscal years ending June 30, 1922, 1923, and 1924, respectively, $19,578.-30, $26,474, and $27,200. The Commissioner of Internal Revenue determined that these funds should have been included in the income of Seatree, and accordingly assessed deficiencies as follows: 1922, $10,956.99; 1923, $4,012.69; 1924, $5,111.88.

Upon appeal, the Board of Tax Appeals reversed the Commissioner's determination, holding that the assignment was of a property right rather than an income, and determining that there were no deficiencies for the years 1923 and 1924, but that there was a deficiency for the year 1922 in the amount of $9,207.60. The firm books were kept on the accrual basis. The 1922 deficiency was based upon the portion of the income accrued prior to the effective date of the assignment creating the trust. From the decision of the Board, the Commissioner has brought the case here for review.

The reason for Seatree's retirement from the American firm of Price, Waterhouse & Co., was his acceptance of a responsible position with the continental firm of the same name located in Paris, France. As an inducement for the change, the American firm agreed to take an active interest in the Paris firm, and insisted on Seatree being made a senior partner therein, with a share of the profits commensurate with that position, and to make the payments to Seatree as provided in section 2, article 4, of the partnership agreement, direct to a trustee for his two daughters. On this understanding Seatree retired entirely from the American partnership and became the senior partner of the continental firm in Paris.

It will be observed that the interest which Seatree had in the American firm agreement for three years' payment for good will, either in the event of death or retirement, did not in any respect enter into the transaction by which he severed his relation with the American firm and became the senior partner in the Paris firm. It follows that the payments provided in section 2 of article IV of the partnership agreement, which were to be made Seatree out of the moneys earned by the firm, or moneys earned subsequent to the time that Seatree severed his connection with the firm, cannot in any view of the case be treated as earnings.

We think that the clause in the agreement providing for the compensating of Seatree for good will, in the event of death or retirement, is a chose in action, which could be assigned or disposed of the same as any tangible or intangible asset. Of course, if the money here in question was derived by Seatree as an income for services rendered, the case would be different. It would then be taxable as personal earnings; but here it is in the nature of profits derived from the disposition of property. Intangible property may be given away without the donor being liable to taxation, and it is immaterial if the donee may immediately thereafter realize a large profit thereon. In that event, the donee is subject to taxation, and not the donor.

The present case, we think, is controlled in all particulars by Hall v. Burnet, 60 App. D. C. 332, 54 F.(2d) 443, 444, 83 A. L. R. 86, where an insurance agent assigned to his wife commissions on renewal premiums in the future. The husband retained the right to collect his own salary. What he assigned to his wife was one-half interest in the renewal premiums. These renewal premiums might accrue during the lifetime of the assignor, or after his death. Pointing out the difference between the assignment of earnings and the transfer of a property right from which profit may arise in the future, Mr. Justice Hitz, delivering the opinion of the court, said: "It was not an assignment of future earnings but the transfer of a property right, and though this property right gave rise to future income, uncertain and contingent though it might be as to amount, that fact does not destroy the distinction. In this case, the contract between appellant and the insurance company gave him a property right in all renewal premiums on all business written for the company by him or by others during the period of the contract. Undoubtedly, his right to these commissions would survive his death and would pass to his estate to the same extent and in the same way as other property which he then possessed. In these circumstances, it is obvious that the right was fixed and certain, and was independent of any future service to be rendered by him. Any uncertainty in the situation concerned only the amount; but the agent's rights as against the insurance company were established. When, therefore, the contract was as-

signed to his wife, a property right passed to her, as capable of assignment as any other sort of property; for instance, as rents to accrue from a lease for a term of years, or royalties from a patent."

In the present case what Seatree assigned was not his earnings or a share in future earnings of a partnership of which he was a member. He assigned a property right to receive certain payments in the future for the surrender of his good will. The profit arising from this property in the future belonged to the assignees, the then owners of the property, and as such was not taxable to Seatree.

The decisions of the Board are affirmed.

GRONER, Associate Justice, dissenting.