### COMMISSIONER OF INTERNAL REVENUE v. ROSS.

#### No. 6938.

Circuit Court of Appeals, Sixth Circuit.

April 17, 1936.

Louise Foster, of Washington, D. C. (Frank J. Wideman and J. Louis Monarch, both of Washington, D. C., on the brief), for petitioner.

Floyd F. Toomey, of Washington, D. C. (Ellsworth C. Alvord, of Washington, D. C., Edward H. McDermott, of Chicago, Ill., Walter A. Eversman and M. G. Leatherman, both of Toledo, Ohio, Alvord & Alvord, of Washington, D. C., and Williams, Eversman & Morgan, of Toledo, Ohio, on the brief), for respondent.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

The Commissioner of Internal Revenue made a deficiency assessment of income tax against respondent for the year 1931 in the amount of $12,948.25. The Board of Tax Appeals decided that no deficiency existed.

The facts were stipulated.

The Toledo, St. Louis & Western Railroad Company was in receivership from October, 1914, to January, 1923. In December, 1914, its stockholders formed a protective committee, and deposited their stocks with the committee which issued certificates of deposit therefor. Thomas H. Hubbard and Edward F. Searles were the owners of certificates issued by the committee, representing 46,515 shares of preferred and 31,885 shares of common stock, and in February, 1918, they entered into an agreement with respondent by which he was empowered to sell these certificates. For his services he was to participate, to the extent of 50 per cent., in the proceeds of the sale. He sold the certificates to the Clover Leaf Company for $2,744,000. Hubbard and Searles died before the sale was completed, but the terms of the sale were embodied in a contract dated June 1, 1922, to which their executors, therein called "sellers," were parties. Other parties were the Clover Leaf Company, called "buyer," respondent himself, called "agent," and the Union Trust Company, called "trustee."

The contract provided that for the certificates the buyer would pay the sellers $1,372,000 and also pay a like amount of the contract price to the agent as his commission; payment to be secured by depositing with the trustee certificates representing certain shares of the stock of the railroad. Payment to the sellers was to be and was made by delivering to them the buyer's notes bearing even date with the contract and maturing as follows: $34,300 payable upon the 1st days of June and December in each year, commencing June 1, 1924. Interest was to be paid at 3½ per cent., 4 per cent., and 5 per cent. for different periods.

The agreement provided that the buyer would pay the agent's commission of 50

per cent., or $1,372,000, in equal installments falling due contemporaneously with the notes executed to the sellers, with a provision for interest similar to that carried by the notes.

The Clover Leaf Company made the payments to the trustee for the benefit of respondent and his assignees regularly up to and including the year 1931. On December 22, 1923, respondent executed and delivered to certain members of his family and their offspring separate irrevocable assignments of all his right, title, and interest in certain shares of the commission and of the interest thereon which would accrue on any remaining installments, together with all the rights, powers, privileges, remedies, and benefits accruing to him under the agreement of June 1, 1922. The portions assigned and the assignees of each are set out in the margin.[1] The assignments were identical except in the name of the assignee and the portion assigned.

The trustee assented to the assignments and has since paid to each assignee and the petitioner their proportionate shares of the installments and interest due and payable each year. The Clover Leaf Company made payments to the trustee on June 1 and December 1, 1931, of the installments then due according to the schedule in the margin.[2] Each assignee included these amounts as part of his taxable income in 1931 and paid the tax. Respondent made his returns on the cash receipt and disbursement basis, but the payments to the assignees were not included in his return for that year.

The Commissioner included all the payments made under the assignments in 1931 in respondent's gross income for that year and assessed the deficiency thereon.

We concur in the contrary view taken by the Board. The applicable statutory provisions are sections 22 and 42 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 797, 805, which, in so far as they are pertinent, are printed in the margin.[3]

We are dealing with the question of "compensation for personal service," or earnings. Upon the execution of the contract of June 1, 1922, respondent's obligation to the estates of Hubbard and Searles became discharged. He never rendered, nor was required to render, any further service to these estates. In this respect the case must be classified with Hall v. Burnet, 60 App.D.C. 332, 54 F.(2d) 443, 83 A. L.R. 86; Nelson v. Ferguson, 56 F.(2d) 121 (C.C.A.3); Helvering v. Seatree, 63 App.D.C. 274, 72 F.(2d) 67. See, also,

---

[1] 
| Portion | Assignee |
|---|---|
| Three-twentieths | Mildred Ross Crow and Harker A. Crow. |
| Three-twentieths | George S. Ross and Lucille B. Ross. |
| One-tenth | Trustees for the benefit of the lawful offspring of Mildred Ross Crow. |
| One-tenth | Trustees for the benefit of the lawful offspring of George S. Ross. |

[2] 
| | Fractional Part | Principal | Interest | Total |
|---|---|---|---|---|
| Mildred Ross Crow | 3/40 | $ 5,145.00 | $ 2,675.40 | $ 7,820.40 |
| Harker A. Crow | 3/40 | 5,145.00 | 2,570.50 | 7,715.50 |
| George S. Ross | 3/40 | 5,145.00 | 2,624.95 | 7,769.95 |
| Lucille B. Ross | 3/40 | 5,145.00 | 2,624.95 | 7,769.95 |
| Mildred Ross Crow Trust | 1/10 | 6,860.00 | 3,498.60 | 10,358.60 |
| George Ross Trust | 1/10 | 6,860.00 | 3,498.60 | 10,358.60 |
| Walter L. Ross | 5/10 | 34,300.00 | 17,493.00 | 51,793.00 |
| | | $68,600.00 | $34,986.00 | $103,586.00 |

[3] "Revenue Act of 1928, c. 852, 45 Stat. 791:

"§ 22. Gross Income

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions * * * or sales, or dealings in property, * * * or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." (26 U.S.C.A. § 22 (a) and note).

"§ 42. Period in Which Items of Gross Income Included

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." (26 U.S.C.A. § 42 and note.)

20

Rossmoore v. Commissioner, 76 F.(2d) 520, 522 (C.C.A.2). Further, respondent accepted the contract of June 1 in discharge of the obligations of Hubbard and Searles. It is not material that he took the contract in lieu of a money payment. Income includes "compensation for personal service * * * *in whatever form paid."* (Italics ours.)

As between respondent and the Clover Leaf Company, the contract was a chose in action in no wise conditioned upon any further duty to be discharged by respondent, and which he had a right to assign. The interests of the assignees were fixed and definite. They did not depend upon "continued activities of the transferor." Shanley v. Bowers, 81 F.(2d) 13, 15 (C.C.A.2); Matchette v. Helvering, 81 F.(2d) 73, 74 (C.C.A.2). The case is not controlled by Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, or Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665. These cases each involved an assignment of anticipated earnings. They did not hold, as pointed out in Shanley v. Bowers, supra, "that an owner may not assign outright any interest recognized as existing property." For the same reason the case of Wood v. Commissioner, 74 F.(2d) 78 (C.C.A.6), is inapplicable.

For the reasons indicated, payments made under the assignments in 1931, the year involved, should not have been included in the respondent's gross income for that year. He had parted with all right of ownership or control by the assignments of December, 1923. The question whether he was taxable in 1922 upon the beneficial interest acquired under the agreement of June 1, 1922, is not before us.

The order of the Board of Tax Appeals is affirmed.