ESTATE OF J. G. DODSON, DECEASED, BY CLARA MAY DODSON, AS EXECUTRIX OF THE WILL OF J. G. DODSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106847. Promulgated January 5, 1943.

Pope F. Brock, Esq., for the petitioner.
F. L. Van Haaften, Esq., for the respondent.

OPINION.

Kern, *Judge:* A summary of the factual situation will make the legal problem here presented more salient. Decedent was a druggist who developed a formula for "ironized yeast", on which he registered a trade-mark. For several years he himself sold this compound, but in 1922 he organized a corporation to make and sell it. This corporation continued in business until 1929, when he took over, as sole stockholder, all its assets and again ran the business as an individual until 1930, when he formed a partnership with his wife to make and sell the yeast. This partnership lasted until May 14, 1934, when he again set up a corporation to carry on the business, dividing its stock between himself and his wife and retaining for himself 51 percent of the shares. At all times decedent was the sole owner of the formula for the manufacture of ironized yeast and the trade-mark. The day after the organization of the corporation in 1934 he entered into a royalty contract with the corporation whereby he licensed the corporation to use the formula and trade-mark for five years, renewable for a like period, in return for 10 percent of the net sales. Then he made the transfer to his wife here brought into question. That was on December 1, 1934, some six months after he had again taken the corporate form. By this transfer he gave his wife a one-half interest in the licensing contract. He reported it to the Commissioner and paid a gift tax computed on a valuation of the gift at $168,095.40. The formula was sold after decedent's death by his executrix for $1,000,000.

Respondent contends that this assignment was an "anticipatory arrangement," a disposition of decedent's income which would prevent it when paid from vesting in the person who earned it; that all that the decedent assigned to his wife was an interest in income to be received in the future, and that decedent had control over the disposition of the entire income received under the license contract even after his assignment of one-half of it to his wife because of his control of the corporation, the respondent relying, to sustain this last proposition, on *Helvering* v. *Clifford*, 309 U. S. 331.

To sustain his proposition that the assignment here in question was an "anticipatory arrangement" covering only an interest in future income and therefore would not prevent the income when paid from being taxed to the assignor, respondent cites *Lucas* v. *Earl*, 281 U. S.

111; *Burnet* v. *Leininger*, 285 U. S. 136; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122; and *Harrison* v. *Schaffner*, 312 U. S. 579. He particularly stresses the "trend" indicated by this line of decisions and the language used in the opinions in the last three cited cases, rather than the specific holdings on the facts presented. As we have indicated, he also contends that the question here presented should be considered in the light of *Helvering* v. *Clifford*, *supra*, and in this contention he finds support in the citations of the *Clifford* case by the Supreme Court in the opinions in the *Horst* case and the *Schaffner* case.

The petitioner, on the other hand, rests his contention upon a neatly constructed legal syllogism, each proposition in which is buttressed by pertinent authority. This may be paraphrased as follows: while the assignment of income does not relieve the assignor of tax thereon, nevertheless, if the assignment or gift is one of income-producing property, the income therefrom is taxable to the assignee or donee as the owner of the property from which the income is derived and thus the true owner of the income; the royalty contract in question here was income-producing property separate and distinct from the trademark which was the subject of the contract; and, since the assignment or gift of a one-half interest in this contract was the assignment or gift of income-producing property, it necessarily follows that the income derived therefrom is taxable not to the donor or assignor, but to the donee or assignee. Petitioner relies upon *Blair* v. *Commissioner*, 300 U. S. 5; *Commissioner* v. *Field*, 42 Fed. (2d) 820; *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; *Byrnes* v. *Commissioner*, 89 Fed. (2d) 243; *J. V. Leydig*, 15 B. T. A. 124; affd., 43 Fed. (2d) 494; *Eugene Siegel*, 20 B. T. A. 563; and *Julius E. Lilienfeld*, 35 B. T. A. 391, and, with great emphasis, upon *Fontaine Fox*, 37 B. T. A. 271, recently cited with approval in *Herbert R. Graf*, 45 B. T. A. 386.

Respondent argues that the language and legal concepts implicit in the recent opinions of the Supreme Court in the *Horst*, *Eubank*, and *Schaffner* cases call for a reexamination of the whole question of "anticipatory arrangements" and require the overruling of such cases as *Fontaine Fox*, *supra*. It is true that new approaches and new concepts have been introduced into the law of taxation by the three opinions of the Supreme Court above referred to, and it therefore follows that lower courts find it more difficult to lay down with certainty the rules of law by which the questions in this field are to be solved. Cf. *Commissioner* v. *Marrs McLean*, 127 Fed. (2d) 942, wherein Hutcheson, *J.*, advises, under similar circumstances, that "until the Supreme Court has spoken authoritatively on the question, they [the lower courts] would do best to decide the questions posed with as little bewordling and as few reasons as possible."

We have read carefully, and with respect, the opinions of the Supreme Court relied upon by respondent, and find nothing therein which directly and explicitly contravenes the propositions advanced by the petitioner to the effect that the donee and not the donor of income-producing property is taxable on the income derived therefrom, and that a royalty contract is property.

However, we do find in the last paragraph of the latest opinion of the Supreme Court on this general subject (the *Schaffner* case) a definite limitation on this rule based upon the concept of the *Clifford* case. There the present Chief Justice says: "* * * we leave it to future judicial decisions to determine precisely where the line shall be drawn between gifts of income-producing property and gifts of income *from property of which the donor remains the owner, for all substantial and practical purposes.* Cf. *Helvering* v. *Clifford, supra.*" (Italics supplied.)

Assuming in petitioner's favor, without deciding, that the royalty contract, which provided for reimbursement to decedent for the use of the trade-mark, was income-producing property, separate and distinct from the trade-mark itself, nevertheless, we are of the opinion that under the peculiar facts of the instant case decedent remained "for all substantial and practical purposes" the owner of the royalty contract and that the sole purpose intended and accomplished by the assignment of a one-half interest therein to his wife was to give her one-half of the income therefrom. See *Helvering* v. *Eubank, supra.* The only two parties to the royalty contract were decedent and a corporation which he controlled. Even after he had assigned a one-half interest in the contract to his wife, he and his controlled corporation could have modified or abrogated the contract at any time by mutual consent (which, under the circumstances, was equivalent to unilateral action on his part). There is nothing in the record here to suggest that this power was limited by any rights of creditors of the controlled corporation. By reason of this power over the contract, we conclude that for all substantial and practical purposes he remained the owner of the contract, and that the only substantial and practical result of the assignment in question was a gift to his wife of the income derived from the contract so long as decedent wished the contract to exist unmodified.

Upon this issue we decide in favor of respondent.

Respondent has conceded that, in the event deficiencies in tax are found to be due from the decedent's estate herein, then interest accruable at the date of decedent's death upon such deficiencies will be allowed as deductions, pursuant to the case of *Central National Bank of Cleveland, Administrator*, 35 B. T. A. 489.

*Decision will be entered under Rule 50.*