## SUNNEN v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. SUNNEN.

### Nos. 13425, 13426.

Circuit Court of Appeals, Eighth Circuit.

April 28, 1947.

C. P. Fordyce, of St. Louis, Mo., for Joseph Sunnen.

Hilbert P. Zarky, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and Robert N. Anderson and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

These two petitions to review a single decision of the Tax Court present identical or similar questions for determination. By stipulation of the parties the cases have been consolidated here for briefing and argument and will accordingly be disposed of by us in one opinion.

The questions presented are: (1) Whether the petitioner, Joseph Sunnen, is taxable under § 22(a) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Internal Revenue Acts, page 825,[1] and under § 22(a) of the Revenue Act of 1938, 52 Stat. 447, 26 U.S.C.A. Internal Revenue Acts, page 1008, for income from certain patent license royalty contracts which he had assigned to his wife; (2) whether a former decision of the Board of Tax Appeals involving other taxable years is res judicata as to the taxes here involved; and (3) whether the assessments for two of the years involved were made within the time prescribed by law.

The appeal of Sunnen, the taxpayer, in No. 13,425 involves deficiencies in income taxes for the years 1937 to 1941, inclusive; and the appeal of the Commissioner in No. 13,426 involves a deficiency for the year 1937 only.

The evidentiary facts are not in dispute. At all times material here the Sunnen Products Company, a Missouri corporation, was engaged at St. Louis, Missouri, in the manufacture and sale of patented grinding machines and other tools. The corporation had outstanding 2,000 shares of capital stock of which petitioner Joseph Sunnen, president of the company, owned 1,780 shares, Cornelia Sunnen, his wife, held 200 shares, W. A. Douglass, vice president, 18 shares, and C. J. Schuepach and R. S. Nichols, one share each. These five persons constituted the board of directors; and it was stipulated that a vote of three directors was required to make any action binding upon the Company.

Joseph Sunnen was an inventor of machines for use in repairing automobiles. He applied for a patent on a "Cylinder Grinder" in 1927, a "Pinhole Grinder" in 1931, and a "Crankshaft Grinder" in 1939, on which he received patents in 1934, 1933, and 1941, respectively. He continued to own these patents through 1941. He, also, applied for a patent on an "Improved Crankshaft Grinder" in 1939, and in 1942 assigned the application to his wife Cornelia. In 1943 a patent was issued to her thereon.

After applying for patents on these several devices, Sunnen entered into written contracts with the Products Company, by the terms of which he licensed the company to manufacture and sell the devices in the United States and foreign countries in consideration of a royalty of 10% of the gross sales price of the devices, to be paid to him "as the same are manufactured, sold and collected for."

---

[1] § 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.
* * *"

Section 22(a) of the Revenue Act of 1938 is the same.

The Cylinder Grinder license or royalty agreement was first executed January 10, 1928, expired January 10, 1938, and was renewed for the life of the patent which will expire on December 4, 1951. The Pinhole Grinder agreement was executed December 5, 1931, and the Crankshaft and Improved Crankshaft agreement June 20, 1931. The last two contracts were for a period of 10 years each.

Each royalty agreement contained a provision that "either party shall have the right without liability for damages or breach, to cancel this license or to cease manufacturing thereunder. * * *" The original Cylinder Grinder contract required a six months' written notice of cancellation; the other contracts required one year's written notice. No notices of cancellation were given by either party during the period involved in this controversy.

After the royalty contracts were executed Sunnen assigned them to his wife Cornelia in writing and gave notice thereof to the company. Each assignment provided that "I [Joseph Sunnen] do hereby assign * * * to Cornelia Sunnen all of my right, title and interest in and to a royalty contract this day executed," etc. The assignments were gifts to the taxpayer's wife, and all such gifts made after 1932 were reported for gift tax purposes.

In 1937 Mrs. Sunnen received $4,881.-35 royalties from the 1928 Cylinder Grinder contract and $15,518.68 from the Pinhole Grinder contract. She received no royalties after 1937 from the original Cylinder Grinder contract; but from the 1938 renewal thereof and from the other contracts she received in 1938, $17,318.80; in 1939, $25,-243.77; in 1940, $50,402.50; and in 1941, $149,002.78, all of which sums were included in her income tax returns and taxes were paid thereon. The income tax returns of petitioner Sunnen for the years 1937 and 1938 showed gross income in the respective amounts of $38,992.40 and $45,625.36.

The decision of the Tax Court in this proceeding was made March 11, 1946. In a previous proceeding involving the taxpayer's income tax liability for the years 1929, 1930, and 1931, the Board of Tax Appeals in a decision entered June 29, 1935, held that Joseph Sunnen was not liable for income taxes on the royalties paid by the Sunnen Products Company to his wife in those years under the original Cylinder Grinder license agreement of January 10, 1928, and the assignment thereof. That decision was based upon the finding that the royalty contract was an assignable property right; that the assignment vested the title to the property in the assignee; and that the license contract and not Sunnen produced the income. The Board cited as authority for its decision Nelson v. Ferguson, 3 Cir., 56 F.2d 121, certiorari denied 286 U.S. 565, 52 S.Ct. 646, 76 L.Ed. 1297.

The same royalty agreement involved in the 1935 proceeding was in effect in 1937, and the Tax Court in this proceeding held that the 1935 decision is res judicata that the royalties of $4,881.35 paid thereunder to Cornelia Sunnen in 1937 are not taxable to Sunnen. The correctness of this ruling is the question here presented by the Commissioner's appeal in No. 13,426.

In the present case the Tax Court on the authority of its own decision of January 15, 1943, in Estate of Dodson, 1 T.C. 416, held that all of the royalties paid to Mrs. Sunnen under the assigned royalty contracts involved were taxable to Joseph Sunnen. The basis of the decision is that by reason of his ownership of a majority of the stock of the Sunnen Products Company, his continued ownership of the patents, and the fact that the royalty contracts were for a limited period and cancellable upon 6 months' or a year's notice, Sunnen retained such control over the income as to make him liable for the taxes thereon.

The most important question presented for determination is whether the income derived from the several royalty contracts for the use of patents and assigned without consideration by Sunnen to his wife constituted a gift of income before it was earned and payable, and is, therefore, taxable to the donor; or, on the other hand, was it a gift of property which after the gift was complete produced income taxable to the donee. In other words, we must determine on which side of the line that separates "gifts of income-producing property and gifts of income from property of which the donor remains the owner" the

income of Mrs. Sunnen from royalties falls. Harrison v. Schaffner, 312 U.S. 579, 583, 61 S.Ct. 759, 762, 85 L.Ed. 1055.

■■ It is now quite definitely settled that an anticipatory assignment to a member of one's family of unearned wages or of the future income of property over which the assignor retains control or ownership does not shift the income tax from the assignor to the assignee. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. By applying the principle of these cases to the facts in the present case, the Commissioner contends that the decision of the Tax Court must be sustained. His first argument is that the patents, ownership of which was retained by Sunnen, and not the royalty contracts constitute the tree to which the fruit (income) must be attributed. We think the weight of authority is clearly to the contrary. The rule seems to be established that a royalty contract is the producing source of the royalty income and that such income is taxable to the assignee. Commissioner v. Field, 2 Cir., 42 F.2d 820; Hall v. Burnet, 60 App.D.C. 332, 54 F.2d 443, 83 A.L.R. 86, certiorari denied 285 U.S. 552, 52 S.Ct. 408, 76 L.Ed. 942; Nelson v. Ferguson, 3 Cir., 56 F.2d 121, certiorari denied 286 U.S. 565, 52 S.Ct. 646, 76 L.Ed. 1297; Lowery v. Helvering, 2 Cir., 70 F.2d 713; Helvering v. Seatree, 63 App.D.C. 274, 72 F.2d 67, 68; Shanley v. Bowers, 2 Cir., 81 F.2d 13; Commissioner v. O'Donnell, 9 Cir., 90 F.2d 907, 910, reversed on other grounds 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903.

■■ In this instance the royalty contracts are Missouri contracts and are assignable under Missouri law. Rosecrans v. William S. Lozier, Inc., 8 Cir., 142 F.2d 118, 124; Keeley v. Indemnity Co., 222 Mo. App. 439, 7 S.W.2d 434. The assignments are also Missouri contracts. The question of their character, validity, the nature and extent of the interest of the assignee and the powers and rights of the assignor

are to be determined therefore by Missouri law. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Eisenmenger v. Commissioner, 8 Cir., 145 F.2d 103, 106, 156 A.L.R. 741.

■ The law in Missouri is the same as the law generally, namely, that an assignment of a contract without reservation vests in the assignee all the title that the assignor possessed. 6 C.J.S., Assignments, § 95; Houser v. Richardson, 90 Mo.App. 134. And "The assignor, after an unqualified assignment and notice to the debtor, usually loses all control over the chose and can do nothing to defeat the rights of the assignee." 6 C.J.S., Assignments, § 96; Leahey v. Dugdale, 41 Mo. 517; Lord v. Schamdoeffel, 50 Mo.App. 360; Buffington v. South Missouri Land Co., 25 Mo. App. 492.

Unlike the transactions involved in Helvering v. Horst, supra; Harrison v. Shaffner, supra, and other cases cited supra, here the assignments of the royalty contracts were conveyances in praesenti of vested income-producing property rights. They were not mere gifts of money payable in the future from the earnings of the donor or from income-producing property owned by him. A royalty contract resembles a lease of real property and the royalties payable thereunder are analogous to rent. Had the royalty contracts not been assigned in the present case the royalties when paid to Sunnen would have been income taxable to him, the same as rents are taxable to the landlord. Burnet v. Harmel, 287 U.S. 103, 108, 53 S.Ct. 74, 77 L.Ed. 199. After the assignments the royalties were "no more the income of the donor than would be the rent from a lease or a crop raised on a farm after the leasehold or the farm had been given away." Helvering v. Horst, supra, 311 U.S. at page 119, 61 S.Ct. at page 148, 85 L.Ed. 75, 131 A.L.R. 655.

■ The contention that the patents, ownership of which was retained by Sunnen, and not the royalty or license contracts which he assigned to his wife, produced the income is contrary to the authorities and must be rejected.

We must consider, therefore, the specific grounds upon which the Tax Court predicated its conclusion that after the assignment of the license contracts to his wife Sunnen remained the owner of the royalties for tax purposes.

The Tax Court held (1) that Sunnen at all times, notwithstanding the assignments, had the express right to cancel the royalty or license contracts, and (2) that by virtue of his position as majority stockholder of the Sunnen Products Company he had the unrestricted power to modify or abrogate the royalty contracts at any time.

The first of these conclusions is based upon the decision of the Tax Court in Estate of Dodson, 1 T.C. 416, 423, which supports the theory on the ground that Sunnen, the assignor, was a party to the license contract and that the assignee was not. This result clearly ignores the legal effect of the assignments, all of which without reservation vested in the assignee all right, title and interest of the assignor. The assignments conveyed to the assignee the right to give notice of cancellation reserved in the royalty contracts as clearly and effectually as they conveyed the right to receive the royalties when payable.

To support the second proposition that Sunnen could modify or abrogate the royalty contracts after their assignment to Mrs. Sunnen by reason of his majority interest in the capital stock of the company, the Commissioner cites the decision of this court in Dickey v. Burnet, 8 Cir., 56 F.2d 917. The facts in the Dickey case differed radically from the facts in the present case. There Dickey entered into a contract with the Ontario Realty Company, a corporation in which he owned a controlling interest, by the terms of which he sold to the corporation a tract of clay-producing land. The contract provided that the corporation should pay two-thirds of the gross income from the land to Dickey's wife and children. The only income of the land resulted from a contract thereafter entered into between Dickey and the corporation whereby he agreed to pay $1 a ton for the clay produced from the land for use in his several clay plants until the clay was exhausted. The latter contract was by its terms to become effective January 1, 1917, and was "to continue from year to year unless terminated by mutual agreement", and the royalty was subject to change from time to time as conditions justified. This last contract was not assigned to Dickey's wife and children. All the rights and reservations in it remained personal to Dickey. He could thus control the gross income or terminate it at any time and his wife and children, beneficiaries of the first contract, could not complain. In the instant case Sunnen retained no such powers in the royalty contracts made with the company, and he made no reservations in the assignments to his wife. The cases, therefore, are not comparable. Here the royalties were not changeable at the will of the assignor. They were fixed at 10% of the gross sales. After the assignments were made Sunnen had no power either to alter or to abrogate them.

The argument that Sunnen could so manipulate the Products Company by reason of his majority stock interest as to destroy the income covered by the assigned royalty contracts is not tenable. Neither the Tax Court nor this court should base a decision upon conjectured or possible fraud. A majority stockholder in a corporation neither owns nor directly controls the contracts or assets of the corporation. The only legitimate thing the corporation could do in this case to destroy the income from royalties would be to exercise its reserved right to cancel the contracts upon notice, as provided in each contract. On that proposition Sunnen could vote as one member of the board of five directors only. He had no plenary power as a majority stockholder even to cancel the royalty contracts. Although Sunnen was a member of the board of five directors of the Sunnen Products Company, as heretofore stated it was stipulated that the vote of three members was required to bind the company.

There is, therefore, no "warrant in the record" (Dobson v. Commissioner, infra, 320 U.S. at page 501, 64 S.Ct. at page 246, 88 L.Ed. 248) to support the finding and decision of the Tax Court that Sunnen either individually or as a majority stockholder had power to destroy the income from the royalty contracts and thus defraud the assignee. The general rule is

that "In courts of law as well as those of equity, after notice to the debtor of an assignment, the interest of a bona fide assignee of a chose in action will be protected against any unauthorized act on the part of the assignor tending to interfere with the rights of the assignee. This protection extends to the nullifying of collusive agreements of the assignor and the debtor to defeat the rights of the assignee." 4 Am.Jur., Assignments, § 105. A collusive agreement, therefore, between Sunnen as majority stockholder and the Products Company to defeat the rights of Mrs. Sunnen as assignee of the royalty contracts would be illegal. Sunnen had no legal right either to cancel or to abrogate the royalty contracts or in any way to modify them before they expired by their own terms. Neither his ownership of the patents nor of the majority of the corporate stock of the Products Company enabled him in any legal way to interfere with the right of the assignee of the royalty contracts. After the assignments were made Sunnen was no longer the owner, actually or constructively, either of the contracts or of the royalties. Compare Commissioner v. Ross, 6 Cir., 83 F.2d 18, 19; Langley v. Commissioner, 2 Cir., 61 F.2d 796; Lum v. Commissioner, 3 Cir., 147 F.2d 356. Under these circumstances a court of equity would protect the rights of Mrs. Sunnen against any illegal interference with such rights by Sunnen personally or by Sunnen in collusion with the Products Company. If, therefore, the finding of the Tax Court that Sunnen could control or defeat the payment of royalties to his wife be considered a finding of fact it is without "warrant in the record," and if it be regarded as a conclusion of law it is without any "reasonable basis in the law." Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239, 246, 88 L.Ed. 248.

■ Another ground relied upon by the Tax Court to support its holding that Sunnen must be regarded as the owner of the royalties provided for in the license agreements is that these agreements are "short time" contracts. It is true that short time trusts created obviously for the purpose of evading taxes do not relieve the creator of such a trust from the duty of paying taxes on the income of the corpus when control of the trust estate is reserved directly or indirectly by the trustor. That rule is not applicable here. In the instant case one of the license agreements continues during the life of the patent and the others are for 10 years each. Considering the nature of a patent license contract a 10 year license can not fairly be said to be for so short a period as to affect the validity of the assignment thereof as a gift. Like a lease covering real estate it may be for a short or a long period, depending upon the circumstances in each case. The period of the license is a material fact in a tax case only when considered in connection with other facts which disclose a purpose to evade taxes. Considered alone the 10 year period of the license contracts does not affect the validity of the assignments as conveyances of income-producing property and render them conveyances of the income alone. To hold otherwise requires the court to repudiate or to ignore the fundamental law of assignments stated above.

Two facts only appear in the record which the Commissioner must rely upon to support the holding of the Tax Court. They are that the assignments of the royalty contracts involved (1) constituted gifts of income producing property (2) from a husband to his wife, members of a family group. The Supreme Court has not held, however, nor has Congress provided by statute, that the income from such a completed gift is taxable to the donor. All the Supreme Court has said is that any family arrangement which splits a donor's income among the members of his family requires "special scrutiny * * * lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned." Helvering v. Clifford, supra [309 U.S. 331, 60 S.Ct. 556] This is far from saying that a husband can not by a bona fide and completed gift transfer to his wife income-producing property without thereafter being liable for federal income taxes on subsequent earnings of the property. Where a gift is complete, without reservations and without retention of control' by the donor, no decision of the Supreme Court has been called to our at-

tention which holds the income therefrom taxable to the donor. The holding of that Court is directly to the contrary in Blair v. Commissioner, 300 U.S. 5, at page 13, ·57 S.Ct. 330, 333, 81 L.Ed. 465.[2]

In his appeal in No. 13,426 the Commissioner contends that the Tax Court erred in holding that the decision of the Board of Tax Appeals in 1935 is res judicata as to royalties of $4,881.35 paid in 1937 to Sunnen's wife, the assignee, under the same cylinder grinder royalty agreement and the same assignment and in holding that said royalties are not taxable to Sunnen. The 1935 decision involved Sunnen's tax liability for the years 1929, 1930, and 1931. The Commissioner's specific contentions are that the principle of res judicata is not applicable (1) because in the interval between the 1935 decision and the decision in the present proceeding the Supreme Court has introduced "new approaches and new concepts * * * into the law of taxation" which show that the 1935 decision was clearly erroneous, and (2) for the reason that the facts and issues in the case here are not identical with the facts and issues in the former case.

In support of his first proposition the Commissioner relies upon the decision of the Supreme Court in Helvering v. Clifford, supra; Helvering v. Horst, supra; Helvering v. Eubank, supra; and Harrison v. Schaffner, supra. His contention is that under the principles of these cases Sunnen must be considered the owner for tax purposes of the royalties paid to his wife in all of the tax years, both the years 1929, 1930, and 1931, involved in the 1935 decision, and the years 1937 to 1941, inclusive, involved in this case.

■ It is elementary, of course, that the doctrine of res judicata is not applicable where there has been an intervening change in the controlling law. We do not think that any new principle of law controlling decision in this case was announced in the Clifford case or in the other cases cited and relied upon by the Commissioner. The principle claimed to have come in to existence in these cases is that income is taxable to one as owner who controls the disposition of the income. But we have shown in the first part of this opinion that that rule or principle does not in any way affect the result in this case.

The second argument is that since income taxes are imposed on an annual basis the claim for taxes in one year is not the same cause of action as the claim for taxes in another year, that the issues are different, and therefore the rule of res judicata can not apply.

■ This contention has support in some of the decisions of the federal courts, but we have no doubt that the great weight of authority is to the contrary. Tait v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355; Montgomery v. Thomas, Collector, 5 Cir., 146 F.2d 76, 79, 80; Gillespie v. Commissioner, 10 Cir., 151 F.2d 903, 906; Cory v. Commissioner, 3 Cir., 159 F.2d 391, and authorities cited; and Bennett v. Commissioner, 5 Cir., 113 F.2d 837.

One of Sunnen's contentions is that the decision of the Board of Tax Appeals in 1935 is res judicata or within the principle of stare decisis in respect of all the

[2] The Supreme Court in the Blair case said:

"The will creating the trust entitled the petitioner during his life to the net income of the property held in trust. He thus became the owner of an equitable interest in the corpus of the property. (Citations) By virtue of that interest he was entitled to enforce the trust, to have a breach of trust enjoined and to obtain redress in case of breach. The interest was present property alienable like any other, in the absence of a valid restraint upon alienation. (Citations)

The beneficiary may thus transfer a part of his interest as well as the whole. (Citation) The assignment of the beneficial interest is not the assignment of a chose in action but of the 'right, title, and estate in and to property.' (Citations)

"We conclude that the assignments were valid, that the assignees thereby became the owners of the specified beneficial interests in the income, and that as to these interests they and not the petitioner were taxable for the tax years in question. * * *"

taxes here in controversy. This proceeding, however, involves not only taxes for different years but with the exception of the 1937 royalties produced by the 1928 contract, it involves different royalties from different royalty contracts for use of different patents. It is true that there is a common relation between the two proceedings. The parties are the same in each case and the questions to be determined are the same. In view of our decision on the merits, however, it is unnecessary to determine this contention.

Our conclusions with reference to the first two questions presented for determination make it unnecessary to consider whether the deficiencies for the years 1937 and 1938 were determined by the Commissioner within the time prescribed by law.

The decision of the Tax Court in No. 13,425, involving the petition of Joseph Sunnen, is reversed, and the decision assailed by the Commissioner in No. 13,426 is affirmed.