LEWIS L. STRAUSS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108586. Promulgated May 15, 1947.

*George G. Tyler*, *Esq.*, for the petitioner.
*Thomas A. Charshee*, *Esq.*, for the respondent.

OPINION.

HILL, *Judge*: *Kodachrome royalty issue.*—Petitioner contends that the amounts received by his wife as royalties under his assignment to her of his interest in "Kodachrome" were not compensation for services which he rendered to New York & Foreign Development Corporation, but that he was fully paid for such services by the inventor's assignment to him of an interest in the Kodachrome process royalties. Petitioner contends that by such assignment he acquired the ownership of a property right in the Kodachrome process. Such ownership is admitted by respondent in his answer to the petition herein. Petitioner contends that the services which he rendered to the New York & Foreign Development Corporation were the consideration for the vesting in him of such ownership and were fully paid thereby. He contends that the operation whereby he acquired such ownership was a closed transaction and that the royalties in question were income attributable to the ownership of such property right and were not compensation for services or earnings attributable to services. Petitioner contends that the assignment to his wife was, as the language thereof indicates, an assignment of his ownership in "Kodachrome" and that after such assignment he had no interest in the Kodachrome process, but that the royalties herein sought to be taxed to him were received by his wife as the income from property which she, herself, owned. Accordingly, petitioner claims that he is not taxable on the income represented by such royalties. He relies primarily upon *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; certiorari denied, 286 U. S. 565; and *Blair* v. *Commissioner*, 300 U. S. 5.

Respondent's position is that this case is squarely within the rule of *Helvering* v. *Horst*, 311 U. S. 112, and *Helvering* v. *Eubank*, 311 U. S. 122. On brief respondent does not mention the *Ferguson* case, but, notwithstanding his admission that petitioner owned an interest in the Kodachrome process at the time of the assignment which he made to his wife, attempts to distinguish the *Blair* case in the same way it was distiguished by the Supreme Court in the *Horst* opinion, that is, on the ground that the petitioner did not assign any income-producing property, but merely assigned the benefits of an obligation to pay compensation to petitioner. In other words, respondent's position, as we understand it, is that the royalties from the Kodachrome process were compensation to petitioner for his services to the New York & Foreign

Development Corporation, regardless of the admission in the pleadings that petitioner had ownership of an interest in such process.

We are unable to deduce from the record that petitioner could have acquired such ownership other than as compensation for his services to the New York & Foreign Development Corporation. It is, therefore, beyond our conception that the compensation for such services was the receipt of the royalties.

Aside from respondent's admission that petitioner owned an interest in the Kodachrome process, we think it clearly appears from the facts herein that petitioner acquired ownership of such interest in consideration for and in full payment of his services to the New York & Foreign Development Corporation.

There seems to be little doubt that prior to the *Horst* and *Eubank* decisions of the Supreme Court a contract right to a certain percentage of royalties on an invention was itself income-producing property and that the holder of such a right was taxable on the royalties paid thereunder. Numerous decisions to that effect were relied upon by the taxpayer in *Estate of J. G. Dodson,* 1 T. C. 416, where apparently for the first time we were asked to review the question here presented in the light of the *Horst* and *Eubank* cases. Contentions quite similar to those here advanced were made by the parties in the *Dodson* case and the respondent there requested that we reexamine the whole question of anticipatory arrangements. With respect to that request we commented as follows:

We have read carefully, and with respect, the opinions of the Supreme Court relied upon by respondent, and find nothing therein which directly and explictly contravenes the propositions advanced by the petitioner to the effect that the donee and not the donor of income-producing property is taxable on the income derived therefrom, and that a royalty contract is property.

It is true that in the *Dodson* case we held the decedent-assignor taxable on the royalty payments on the ground that for all substantial and practical purposes he had retained ownership of the royalty contract itself and that he had not effectively assigned to his wife any interest therein. The significant and controlling fact there was the assignor's control over the corporation which had contracted to pay him the royalties. Cf. *Joseph Sunnen,* 6 T. C. 431, which presents a similar degree and type of control over the royalty payments. While, therefore, the paragraph quoted above was not the basis of our decision in the *Dodson* case, we think the observations contained therein are correct and that it follows therefrom that petitioner should be sustained here.

The *Horst* case is obviously distinguishable in that the taxpayer there assigned interest payable on a bond, but retained the bond itself,

and thus had not divested himself of the income-producing asset, but had merely given the right to the income to another. *Lewis* v. *Rothensies*, 61 Fed. Supp. 862; affd., 150 Fed. (2d) 959, is similarly distinguishable, for the taxpayer there did not assign his contract right to royalty payments, but merely assigned certain royalties. Under the terms of petitioner's letter of assignment to his wife there can be no doubt that he intended to and did transfer to her his entire interest in the Kodachrome process and in the royalty contract. He thus parted with the income-producing asset itself and met the requirement of *Blair* v. *Commissioner*, *supra*. Hence, the *Horst* case does not apply.

The facts of the *Eubank* case are not similar to those here. That decision extended the doctrine of *Lucas* v. *Earl*, 281 U. S. 111, to require that one performing services, rather than his assignee, be taxed on the compensation for such services even though the payments become certain in amount only subsequent to the completion of the services.

The basis for such holding is that the renewal commissions were compensation additional to the compensation received for services rendered in procuring initially policies of insurance on which renewal premiums were paid. The commissions in question were paid by the insurance companies which owned the insurance contracts in respect of which the renewal premiums were paid. Eubank had no interest or property right in such contracts. He had only the right to compensation from the insurance companies measured by a percentage of the renewal premiums paid on the insurance contracts which he had been instrumental in procuring under employment by the insurance companies. Eubank merely assigned his right to such compensation as and when realized. The Supreme Court said in its opinion therein:

No purpose of the assignments appears other than to confer on the assignees the power to collect the commissions, which they did in the taxable year. The Government and respondent have briefed and argued the case here on the assumption that the assignments were voluntary transfers to the assignees of the right to collect the commissions as and when they became payable, and the record affords no other basis.

In the instant case petitioner earned compensation for services rendered to the New York & Foreign Development Corporation, for which he was paid by the vesting in him of ownership of an interest in the Kodachrome process. This process was an income-producing asset and produced income in the form of royalties. Such royalties were not the earnings of petitioner and were not compensation for services rendered by petitioner. They were the increment of an investment in income-producing property. He assigned this property to his wife and she received the royalties in question in the taxable years here involved by reason of her ownership of the property from which the royalties flowed.

We think it apparent that, because of the wide dissimilarity between the facts in the *Eubank* case and in the instant case, the principle announced by the Supreme Court on the facts of the former is not applicable here. We accordingly hold that respondent erred in taxing to petitioner the royalties received by his wife in 1938 and 1939.

*Polaroid stock basis issue.*—Both parties are agreed that the applicable method for determining the basis of the Polaroid common stock is prescribed by Regulations 101, art. 22 (a)-8, which provides in part:

* * * If common stock is received as a bonus with the purchase of preferred stock or bonds, the total purchase price shall be fairly apportioned between such common stock and the securities purchased for the purpose of determining the portion of the cost attributable to each class of stock or securities, but if that should be impracticable in any case, no profit on any subsequent sale of any part of the stock or securities will be realized until out of the proceeds of sales shall have been recovered the total cost.

Respondent contends that the cost to petitioner of acquiring the class A and the common stock should all be allocated to the class A stock. Petitioner claims that the common stock had some value when acquired, but that it is impracticable to make any allocation as between the class A and common stock and that therefore no profit should be considered as realized until total cost has been recovered.

We think the record indicates, and we have made findings of fact as to, the relative value per share of the common stock and of the class A stock of Polaroid at the time of acquisition thereof by petitioner, and that in accordance with the relative per share value as so found an allocation of the cost per share of the total cost to petitioner of 225 shares of class A stock and 1,350 shares of common stock is practicable and reasonable. We find warrant for these findings in the following underlying facts of record: (a) The redemption value of both the class A and the class B stock was $100 per share; (b) the minimum option price of the common stock was $25 per share; (c) the sale price of the class A stock was $100 per share; and (d) the sale price of a unit of 250 shares of B stock and 1,000 shares of common stock was $50,000.

The common stock, the sale of which is here involved, was part of a common stock bonus in the sale to petitioner of 225 shares of A stock at $100 per share. The sale price of the 1,000 shares of common stock sold in a unit with 250 shares of B stock for $50,000 was obviously not less than $25 per share, since the 250 shares of B stock in such unit were redeemable at $100 per share. Hence the portion of the $50,000 unit sale price allocable to the 1,000 shares of common stock in such unit was not less than $25,000.

We, therefore, hold that, for the purpose of determining the gain realized by petitioner on the sale of 500 shares of the common stock of Polaroid in 1938, the cost basis of such stock should be computed in

accordance with our finding of the relative value per share as between the common stock and the class A stock, as hereinabove indicated.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER, *J.*, dissents.

———

HARRON, *J.*, dissenting: Respondent's determination under section 22 (a) is that income paid to petitioner's wife was received as compensation for payment of services rendered by petitioner. Petitioner admits that something which he received constituted the arrangement under which he was to receive compensation for personal services. The record does not show precisely what the arrangement was. The inference from the record is that, in the year the services were completed and compensation became payable, assuming petitioner is on the cash basis, he did not report for tax that compensation. In 1938 and 1939 the arrangement bore fruit; cash payments were made. Perhaps when the arrangement was made there was some uncertainty that it would yield cash to petitioner, (which seems doubtful) but, at any rate, it did in the taxable years. The cash received was intended by the New York & Foreign Development Co. to represent compensation to petitioner for personal services. The arrangement made in 1935, or before, was intended to put cash in petitioner's hands in lieu of cash the Development Co. otherwise would have paid petitioner for his services. Since there is no doubt that the means employed was the means of paying petitioner for his services, and since there is no way of passing on to another the tax on compensation for personal services, petitioner is taxable on the sums paid in the taxable years. The assignment to petitioner's wife was one of the anticipatory arrangements to divert income from the taxpayer who earned it which can not be approved under the cardinal rule of *Lucas* v. *Earl*, 281 U. S. 111. See also, *Commissioner* v. *Smith*, 324 U. S. 177, and *Harrison* v. *Schaffner*, 312 U. S. 579, where the following was stated:

Since granting certiorari we have held, following the reasoning of *Lucas* v. *Earl, supra,* that one who is entitled to receive at a future date, interest or compensation for services and who makes a gift of it by an anticipatory assignment, realizes taxable income quite as much as if he had collected the income and paid it over to the object of his bounty. *Helvering* v. *Horst,* 311 U. S. 112; *Helvering* v. *Eubank,* 311 U. S. 122. Decision in these cases was rested on the principle that *the power to dispose of income is the equivalent of ownership of it and that the exercise of the power to procure its payment to another, whether to pay a debt or to make a gift, is within the reach of the statute taxing income* "derived from any source whatever." [Italics added.]

The theory of petitioner goes outside the question presented by the respondent's determination. Petitioner has not faced the question squarely and he has not introduced evidence which overcomes the cor-

rectness of the determination. For example, it can be suggested that if petitioner had been paid compensation for his personal services in property, he would have been bound to report such payment for income tax at the value of the property. Or, if the property had no value at the time, he would have to report for tax what he realized from it when realization occurred. See *Commissioner* v. *Smith, supra*. Until petitioner reports for tax the compensation for his personal services, no question can be reached as to the proposition that the donee is taxable on the income of income-producing property rather than the donor. Earnings, for purposes of income tax, are a particular class of income. Section 22 (a) reaches earnings, from whatever source derived. Earnings can be in many forms. The form which they take can not serve to frustrate the impact of the statute which taxes earnings.

The stipulation under which this case was presented shrewdly confined its content to a few matters designed to put ahead of the real question the theory that the sums involved represented no more than earnings from property which petitioner had given away. I am not satisfied from the evidence that the sums were just earnings from income-producing property rather than payments from someone who received royalty payments which thereafter passed to petitioner under his arrangement with the New York & Foreign Development Co. to receive payment for services. Some documents in evidence are ambiguous, and it is obvious that all the material facts are not in the record. The record does not show what the arrangement really was under which petitioner was to be paid for his services. There is a large element of failure to overcome the determination. But, even so, "in point of substance, [petitioner] has parted with no substantial interest in property other than the specified payments of income which, like other gifts of income, are taxable to the donor." *Harrison* v. *Schaffner, supra*.

I respectfully dissent.

---

OPPER, *J*., dissenting: That the present proceeding is indistinguishable from *Helvering* v. *Eubank*, 311 U. S. 122, seems to me to be disclosed by the dissenting opinion of Mr. Justice McReynolds in that case. Although the operative facts are not set forth extensively in the *Eubank* opinion, they do appear in the dissent. It is there stated:

* * * Under the terms of his [Eubank's] contract he was entitled to renewal commissions on premiums thereafter collected by the company * * * without the obligation to perform any further services. In November 1924 he assigned his right, title and interest *in the contract* as well as the renewal commissions to a corporate trustee * * *. [Emphasis added.]

The dissent then quotes from the opinion below as follows:

* * * At the time of assignment there was nothing contingent in the petitioner's right, although the amount collectible in future years was still uncertain

and contingent. But this may be equally true where the assignment transfers a right to income from investments, as in *Blair* v. *Commissioner* * * * *Horst* v. *Commissioner*, 2 Cir., 107 F. 2d 906, *or a right to patent royalties*, as in *Nelson* v. *Ferguson*, 3 Cir., 56 F. 2d 121 * * *. [Emphasis added.]

The dissent proceeds:

> The assignment in question denuded the assignor of all rights to commissions thereafter to accrue *under the contract* with the insurance company. * * *
>
> * * * the statute does not undertake to impose liability upon him because of payments to another *under a contract* which he has transferred in good faith, under circumstances like those here disclosed. [Emphasis added.]

If petitioner had made an agreement with the inventors, in anticipation of his contribution of services, that he was to be paid by sharing in the proceeds (or royalties, or commissions) to be earned subsequently, the case would then have been on all fours with *Helvering* v. *Eubank*. Indeed, we do not know from the facts that that precise arrangement did not occur. But even assuming that the details of petitioner's compensation were not agreed upon until after he had rendered the services, it is difficult to believe that that slight though technically elegant legalistic departure from the *Eubank* pattern can suffice to change the whole nature of the fabric.

While the present result seems to me to follow faithfully the reasoning of the dissenting opinion in the *Eubank* case, it does not, in my view, conform to the doctrine of the majority opinion. I accordingly respectfully dissent.