Henry J. Taylor v. Commissioner.
Taylor v. Commissioner
Docket No. 8897.
United States Tax Court
1947 Tax Ct. Memo LEXIS 142; 6 T.C.M. (CCH) 843; T.C.M. (RIA) 47201; July 11, 1947
*142 Gerald B. O'Neill, Esq., for the petitioner. James C. Maddox, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $29,542.01 in income tax for 1941, in part by adding to income reported one-fourth of certain royalties which were paid for the use of patents issued to petitioner and which were credited on his books to his wife. Petitioner assails the determination, contending that he had made an effective sale and assignment of a one-fourth interest in the patents to his wife. Findings of Fact Petitioner, an individual residing in New York City, filed his income tax return for 1941 with the collector of internal revenue for the third district of New York. Petitioner was the owner of Letters Patent Nos. 1,818,923 and 1,849,774, issued to him in 1931 on a method of sealing packages with advertising effects. This sealing, commercially known as Ad-Seal-It, was commonly used on loaves of bread, and for many years licenses under the patents had produced royalties substantial in amount. Petitioner spent much time abroad, and wishing his wife to have an independent income, he suggested in *143 December 1940 that she acquire a quarter interest in the patents. She agreed, and a price of $57,600 was computed on the basis of an appraisal made for tax purposes. There was no written contract of sale, but on January 15, 1941, petitioner furnished his bookkeeper with the following office memorandum: "Confirming assignment by me to Mrs. Taylor (Fay K. Taylor) representing 25% interest in Ad-Seal-It patents 1,818,923 and 1,849,774 at price $57,600.00 and in all royalties received, please make proper entries on our books carrying this transfer and refer to Mr. Boehm for any further question. "This authorizes you to advance to F.K.T. any sums from time to time to apply against royalties due her." Mrs. Taylor's personal account, kept on the books of petitioner's business, was charged with $57,600 and petitioner's investment account was credited with a like amount as "covering the sale on Jan. 1, 1941, of a 25% interest in the Ad-Seal-It patent." Royalties were paid as before to petitioner, and 25 percent of the annual total was regularly credited to the account of Mrs. Taylor at the end of the year. The royalties when received were deposited, as previously, with the Chemical Bank *144 & Trust Co. in an account designated "Package Advertising Company," the trade name under which petitioner conducted his business. He alone had authority to draw funds from this account, and when absent, left a supply of checks, signed in blank, with his secretary. He was abroad as a war correspondent most of the time during the years 1941-1945. As and when requested by Mrs. Taylor, the secretary furnished her with funds drawn from the account which Mrs. Taylor used for personal expenses. These withdrawals, and the recited purchase price of the patents, were charged to her personal account on the books. During 1941 she withdrew $8,150; royalties of $43,675.81 were credited to her, and the $57,600 was charged as purchase price, leaving a debit balance of $22,074.19 at the end of the year. During 1942 her account was charged with $6,764.42; royalties of $40,277.27 were credited to her, and at the end of the year her account showed a credit balance of $11,438.66. In subsequent years she continued to withdraw funds which were charged against the account, and royalties, always in excess of such withdrawals, were credited to it. By September 23, 1946, the royalties credited totalled $152,235.25, *145 of which $57,600 had been applied to the price of the patents, $77,690.66 had been withdrawn, and $16,944.59 remained as the credit balance. In addition to the royalties Mrs. Taylor also received about $10,000 a year from petitioner for household expenses. The value of her separate property, consisting principally of U.S. Government bonds and stocks, given to her by petitioner, in 1941 exceeded $57,600. In her income tax return for 1941 Mrs. Taylor reported royalties of $43,675.81. Early in 1944 an investigating revenue agent requested evidence of petitioner's sale of a one-quarter interest in the patents to Mrs. Taylor. An employee informed him that it was in a safe deposit box and would be sent. Petitioner's accountant then consulted an attorney, who was unknown to petitioner; he displayed the records and explained the circumstances under which petitioner had prepared the memorandum purporting to transfer a one-quarter interest in the patents to Mrs. Taylor, and with petitioner's knowledge had the attorney prepare an agreement, dated January 2, 1941, whereby petitioner purported to sell and assign to Mrs. Taylor a one-quarter undivided interest in the two patents, together with *146 all royalties therefrom, for $57,600, of which $40,000 was payable on or before January 2, 1942, and $17,600 on or before January 2, 1943. Further provisions were that upon default in payment the assignment and sale should become null and void; petitioner should have the unrestricted right and license to contract for, make, design and sell the articles covered by the patents and to license others to do so, subject to his payment of one-fourth of the royalties to Mrs. Taylor; that petitioner would devote his best efforts to increase the receipt of royalties and should not transfer the patents without Mrs. Taylor's consent; that petitioner would keep correct records of royalty receipts, open to Mrs. Taylor's examination. This agreement was signed by the parties and mailed to the revenue agent on May 18, 1944. With alert perception the revenue agent noted that the attorney's address, appearing on the back of the instrument, bore a postal zone number, and as such numbers were not initiated until 1943, he became suspicious that the instrument had not been prepared on January 2, 1941. In reply to his inquiry the attorney admitted that the instrument was prepared and signed in May, 1944. *147 Petitioner was the owner of the entire interest in the two Letters Patent Nos. 1,818,923 and 1,849,774 during 1941. On his income tax return for 1941 petitioner did not report $43,675.81 representing one-fourth of the royalties received from the use of these patents. The Commissioner determined that the amount should be included in his income. Opinion Petitioner assails the Commissioner's inclusion in his income of $43,675.81, representing royalties received on a one-quarter interest in two Ad-Seal-It patents which interest he claims to have sold and assigned to his wife. He argues persuasively that the transfer of an undivided interest in a patent or in patent rights is effective to relieve the transferor from tax on royalties which the patent or patent rights thereafter produce, Sunnen v. Commissioner (C.C.A., 8th Cir.), 161 Fed. (2d) 171, decided April 28, 1947; Nelson v. Ferguson (C.C.A., 3rd Cir.), 56 Fed. (2d) 121; certiorari denied, 286 U.S. 565; Lewis L. Strauss, 8 T.C. 1058, promulgated May 15, 1947; Fontaine Fox, 37 B.T.A. 271, and that this is true of an effective alienation of any income-producing property. *148 Blair v. Commissioner, 300 U.S. 5; Herbert R. Graf, 45 B.T.A. 386. Accepting the legal proposition, respondent contends that the alleged transfer lacked substance; that it constituted a mere device whereby the husband artificially channeled his own income to the wife without a valid and effective relinquishment of the income-producing asset, and that the pretended transfer, if subjected to the careful scrutiny required of transactions between closely related individuals or entities, lacks bona fides, and for tax purposes should be ignored. Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293; Harrison v. Schaffner, 312 U.S. 579; Helvering v. Clifford, 309 U.S. 331; Higgins v. Smith, 308 U.S. 473; Gregory v. Helvering, 293 U.S. 465. A careful study of the evidence leads us to the conclusion that respondent is correct. The alleged sale grew out of conversations between petitioner and his wife in December 1940. It was orally understood between them that she would acquire a 25 percent interest in the patents; would be entitled to 25 percent of the royalties, *149 and could pay the price of $57,600 from amounts credited to her on the books of his business. There was no written contract; no consideration passed apart from the royalties later credited; the royalties were paid by the licensees, as before, to the husband; were deposited in his bank account, and the wife, when in need of funds for personal expenses, advised petitioner's secretary who sent her a check drawn against his bank account. An office memorandum, prepared by petitioner for the secretary on January 15, 1941, advised her of the "sale and assignment," directed proper recording on the books, and authorized the payment of royalties on the wife's demand. A photostatic copy of the original and also a carbon copy were introduced in evidence. Petitioner testified that the original, now lost, had been taken from the wife's safe deposit box in July 1945. The wife "supposed" that the secretary, now deceased, who had a key to her box, had put it there, but apparently had not known it before. A bookkeeper in petitioner's office testified that she had seen the carbon copy in January 1941; that it was not kept in the files but was "found" in petitioner's office shortly before the trial of *150 this case. After an internal revenue agent had demanded evidence of the assignment to Mrs. Taylor, petitioner's accountant had an attorney draft a sale contract in May 1944 and both parties signed this - two years after full payment for the patent interest had been made according to its terms. This instrument was dated January 2, 1941, and only by inquiry of the attorney did the revenue agent ascertain that it was not signed on the date that it bore. Under these circumstances the transfer rests on nothing more substantial than the oral understanding between petitioner and his wife that she was to have a one-quarter interest in the patents, the memorandum and the book entries so indicating. She paid nothing which was not provided by the arrangement; she held no evidence of a proprietary interest except the informal office memorandum which she apparently did not know was in her safe deposit box, and the licensees under the patents continued to pay all royalties to petitioner. His agent continued to receive them; to deposit them, and to disburse them in accordance with his instructions that they be paid to his wife on demand. While ineffective for creating rights, provisions of the *151 formal instrument of May 1944 offer some indication of petitioner's intentions, and we note as of damaging significance that petitioner purports to reserve an unrestricted right to contract for, make, design and sell articles covered by the patents and to license others to do so. We are of opinion and hold that petitioner "* * * in point of substance, has parted with no substantial interest in property other than the specified payments of income, * * *. [Harrison v. Schaffner, supra]." And the Commissioner's determination that the royalties produced by the patents should be included in his income for 1941 is approved. Decision will be entered for the respondent.